997 F.2d 717
 62 USLW 2062, 29 Collier Bankr.Cas.2d 198,
Bankr. L. Rep. P 75,348
 In re Ira N. SAMPSON, individually and as a general partner
of Tuchas Associates, a Colorado general
partnership, Debtor.
Katherine Lavonne SAMPSON, Plaintiff-Appellee,
v.
Ira N. SAMPSON, Defendant-Appellant.
 No. 92-1238.
 United States Court of Appeals,
Tenth Circuit.
 June 21, 1993.
 
 Harry Michael Sterling (Dana A. Temple with him on the brief), Gelt, Fleishman & Sterling, Denver, CO, for defendant-appellant.
 Dennis A. Lacerte, Case & Lacerte, Denver, CO, for plaintiff-appellee.
 Before BALDOCK, WOOD* and EBEL Circuit Judges.
 BALDOCK, Circuit Judge.
 
 
 1
 Debtor and Defendant in the instant proceeding Ira N. Sampson appeals from a district court order 142 B.R. 957, affirming a bankruptcy court order which denied discharge of a debt to his former wife, Plaintiff Katherine Lavonne Sampson, because it was in the "nature of alimony, maintenance or support" within the meaning of 11 U.S.C. § 523(a)(5). Our jurisdiction arises under 28 U.S.C. § 158(d), and we affirm.
 
 
 2
 After nine years of marriage, Plaintiff and Defendant divorced in 1984. An agreement between the parties, entitled "Property Settlement and Permanent Orders Agreement" ("the Agreement"), was incorporated into the divorce judgment filed in the state court proceeding. In Article I of the Agreement, entitled "Maintenance (Spousal Support)," Defendant agreed to pay Plaintiff "as and for maintenance, a specific monthly amount" over an eight year period, commencing in June 1984.[1] The Agreement stated that "said maintenance payments are for the support of [Plaintiff] and are not in lieu of or partially in lieu of property division and that the parties have herein agreed to a fair and equitable division of marital property as hereinafter provided." The division of marital property was specifically addressed in Article III of the Agreement and included a cash payment to Plaintiff over a two year period which is not at issue in this case.
 
 
 3
 In November 1990, Defendant filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Plaintiff filed a complaint with the bankruptcy court to determine the dischargeability of Defendant's "maintenance" obligations under the Agreement. At an evidentiary hearing before the bankruptcy court, Defendant, Defendant's attorney in the divorce proceeding, and Defendant's accountant testified that the payments were intended to be a property settlement, but were designated as maintenance so that Defendant could deduct the payments from his gross income for tax purposes. Plaintiff testified that she did not remember these particular distinctions, and Plaintiff's divorce attorney was deceased by the time of the hearing. It is undisputed that at the time of the divorce, Plaintiff was a full-time homemaker with no independent income, an arthritic condition which hindered her employment, no job skills or training although she had worked as Defendant's secretary prior to their marriage, and monthly living expenses of $4,165. It is also undisputed that, at the time of the divorce, Defendant was a mortgage banker with a monthly income of approximately $14,850 and monthly living expenses of $3,795.[2]
 
 
 4
 The bankruptcy court found that the Agreement unambiguously provided that Defendant's debt to Plaintiff was for maintenance. The bankruptcy court reasoned that our decision in In re Yeates, 807 F.2d 874 (10th Cir.1986), precluded it from considering extrinsic evidence to the contrary.[3] Accordingly, the bankruptcy court found that the debt was nondischargeable. However, the bankruptcy court stated that, if it could look beyond the Agreement, it would find that both parties intended the obligation as property settlement. According to the bankruptcy court, "the parties unambiguously said something that they didn't intend" in order to "disguise[ ]" a property settlement as maintenance so that Defendant could take the tax deduction. The bankruptcy court made these additional findings in order to avoid the necessity of another hearing should its judgment be reversed on appeal.
 
 
 5
 Defendant appealed the bankruptcy court's order to the district court. The district court held that the bankruptcy court erred in not looking beyond the unambiguous Agreement to determine whether the obligation was actually in the nature of alimony, maintenance or support. The district court also disagreed with the bankruptcy court's alternative finding that the parties intended the obligation as property settlement. The district court considered the agreement itself, the fact that payments extended over an eight year period, the gross imbalance of income between the parties at the time of the divorce, and Plaintiff's lack of marketable skills in "conclud[ing] that the parties intended the obligation as alimony, maintenance or support." Therefore, the district court affirmed the bankruptcy court's order on an alternative ground.
 
 
 6
 On appeal to this court, Defendant contends that the district court erred in redetermining the bankruptcy court's factual findings. In reviewing a bankruptcy court order, the district court sits as an appellate court and must accept the bankruptcy court's factual findings unless they are clearly erroneous. In re Robinson, 987 F.2d 665, 667 (10th Cir.1993). Whether an obligation to a former spouse is actually in the nature of support is a factual question subject to a clearly erroneous standard of review. See In re Goin, 808 F.2d 1391, 1393 (10th Cir.1987) (per curiam); Yeates, 807 F.2d at 877. See also Bankr.R. 8013. Defendant notes that Plaintiff did not cross-appeal the bankruptcy court's alternative finding and argues that, because the only issue before the district court was whether the bankruptcy court applied an erroneous legal standard, once the district court determined this issue in Defendant's favor, it should have adopted the bankruptcy court's alternative finding and entered judgment for Defendant.
 
 
 7
 Defendant's argument ignores the district court's authority as a reviewing court, as well as our authority, to affirm the bankruptcy court's decision on an alternative ground which is supported by the record. See In re Slack Horner Foundries Co., 971 F.2d 577, 579-80 (10th Cir.1992); In re Calder, 907 F.2d 953, 956 n. 4 (10th Cir.1990) (per curiam). While we recognize that language in the district court's opinion suggests that it may not have applied a clearly erroneous standard but, rather, may have made independent findings concerning the parties' intent, there is no reversible error in this case because our independent review of the bankruptcy court's alternative finding leads us to conclude that it is indeed clearly erroneous. See Nitz v. Nitz, 568 F.2d 148, 152 n. 4 (10th Cir.1977) ("On appeal to this court the question is whether the findings of the bankruptcy judge, and not those of the district court, were clearly erroneous.") (citation omitted).
 
 
 8
 Under Chapter 7 of the Bankruptcy Code, a debtor may discharge "all debts that arose before the date of the order for relief." 11 U.S.C. § 727(b). Excepted from discharge are debts to a "former spouse ... for alimony to, maintenance for, or support of such spouse ... [provided that] such liability is actually in the nature of alimony, maintenance or support." Id. § 523(a)(5)(B). See also id. § 727(b) (discharge subject to exception provided in § 523). This provision in the Bankruptcy Code "departs from the general policy of absolution, or 'fresh start' " in order to "enforce an overriding public policy favoring the enforcement of familial obligations." Shaver v. Shaver, 736 F.2d 1314, 1315-16 (9th Cir.1984) (citations and footnote omitted). See also Forsdick v. Turgeon, 812 F.2d 801, 802 (2d Cir.1987); In re Harrell, 754 F.2d 902, 906 n. 6 (11th Cir.1985). Whether a debt is nondischargeable under § 523(a)(5) is a question of federal law. Sylvester v. Sylvester, 865 F.2d 1164, 1166 (10th Cir.1989) (per curiam).
 
 
 9
 Our cases addressing § 523(a)(5), specifically our opinions in Yeates and Goin, have not articulated a consistent standard for bankruptcy courts to apply in order to determine whether a debt to a former spouse is "actually in the nature of alimony, maintenance, or support." In Yeates, we stated that "intention of the parties" was "the initial inquiry," 807 F.2d at 878, which suggests that the bankruptcy court must consider one or more additional factors in the § 523(a)(5) inquiry. We then stated, however, that "[i]f the parties did not intend to create a support obligation, then the debt is a property settlement and must be discharged in bankruptcy ... [but] if the parties intended to create a support obligation, that debt should not be discharged," id., which suggests that the parties' intent is dispositive on the question of whether a debt is nondischargeable under § 523(a)(5). Furthermore, we stated that the determination of the parties' intent "must be made by looking at the substance of the agreement viewed in the crucible of surrounding circumstances." However, we then stated that "[a] written agreement between the parties is persuasive evidence of intent, [and] if the agreement between the parties clearly shows that the parties intended the debt to reflect either support or a property settlement, then that characterization will normally control."[4] Id. (internal quotation and citation omitted). Thus, Yeates itself could be construed to be internally inconsistent.
 
 
 10
 Goin, which came out approximately a month after Yeates, articulates a seemingly different standard and does not even cite Yeates. In Goin, after recognizing that neither state law nor the parties' characterization determined whether a debt was nondischargeable under § 523(a)(5), we stated that "a bankruptcy court must look beyond the language of the decree to the intent of the parties and to the substance of the obligation." 808 F.2d at 1392 (citation omitted). We cited four factors "pertinent" to the inquiry:
 
 
 11
 (1) if the agreement fails to provide explicitly for spousal support, the court may presume that the property settlement is intended for support if it appears under the circumstances that the spouse needs support; (2) when there are minor children and an imbalance of income, the payments are likely to be in the nature of support; (3) support or maintenance is indicated when the payments are made directly to the recipient and are paid in installments over a substantial period of time; and (4) an obligation that terminates on remarriage or death is indicative of an agreement for support.
 
 
 12
 Id. at 1392-93 (citation omitted).
 
 
 13
 Goin 's statement that a bankruptcy court should consider both the parties' intent and the substance of the agreement arguably conflicts with Yeates' suggestion that the parties' intent is dispositive on the issue of whether a debt to a former spouse is nondischargeable under § 523(a)(5) and Yeates suggestion that an unambiguous agreement will normally control. As a three-judge panel, we are not at liberty to overrule either Yeates or Goin, but rather we must attempt to reconcile them. Nonetheless, we are confident in pursuing this task because, while the language in the two opinions appears inconsistent, their holdings are entirely consistent. With reconciliation in mind, we turn to this case.
 
 
 14
 Congress, by directing federal courts to determine whether an obligation is "actually in the nature of alimony, maintenance, or support," sought to ensure that § 523(a)(5)'s underlying policy is not undermined either by the treatment of the obligation under state law or by the label which the parties attach to the obligation. Thus, a debtor's lack of duty under state law to support his or her former spouse does not control whether an obligation to the former spouse is dischargeable in bankruptcy. Yeates, 807 F.2d at 877-78. See also Matter of Biggs, 907 F.2d 503, 505 (5th Cir.1990); Shaver, 736 F.2d at 1316. Similarly, § 523(a)(5) requires federal courts to look beyond the label which the parties attach to an obligation. See Sylvester, 865 F.2d at 1166 (affirming bankruptcy court's finding that obligation was actually in the nature of support even though divorce decree referred to settlement agreement as property settlement); Goin, 808 F.2d at 1392 (affirming bankruptcy court's finding that obligation was actually in the nature of support even though settlement agreement indicated that obligation represented former spouse's one-half interest in certain real estate). Inquiry by federal courts into the actual nature of the obligation promotes nationwide uniformity of treatment between similarly situated debtors, Matter of Seibert, 914 F.2d 102, 106 (7th Cir.1990), and furthers § 523(a)(5)'s underlying policy favoring enforcement of familial support obligations over a debtor's "fresh start." See Shaver, 736 F.2d at 1316 n. 3 (discussing rationale underlying § 523(a)(5) exemption from discharge for support obligations).
 
 
 15
 Because the label attached to an obligation does not control, an unambiguous agreement cannot end the inquiry. As we stated in Goin, "a bankruptcy court must look beyond the language of the decree to the intent of the parties and the substance of the obligation" to determine whether the obligation is actually in the nature of alimony, maintenance or support. 808 F.2d at 1392 (emphasis added). See also 2 Homer H. Clark, Jr., The Law of Domestic Relations in the United States, § 17.7 at 305 (2d ed. 1987) ("the crucial issue is whether the obligation imposed by the divorce court has the purpose and effect of providing support for the spouse") (emphasis added). Thus, whether an obligation is nondischargeable under § 523(a)(5) is a dual inquiry into both the parties's intent and the substance of the obligation. The party seeking to hold the debt nondischargeable has the burden of proving by a preponderance of the evidence that the parties intended the obligation as support and that the obligation was, in substance, support. See Grogan v. Garner, 498 U.S. 279, 290, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).
 
 
 16
 The parties' intent is the "initial inquiry" to determine whether a debtor's obligation to his or her former spouse is actually in the nature of alimony, maintenance or support. Yeates, 807 F.2d at 878. This inquiry, however, does not turn on one party's post hoc explanation as to his or her state of mind at the time of the agreement, even if uncontradicted. See Matter of Benich, 811 F.2d 943, 945 (5th Cir.1987). Rather, the critical inquiry is the shared intent of the parties at the time the obligation arose. Tilley v. Jessee, 789 F.2d 1074, 1078 (4th Cir.1986).
 
 
 17
 "A written agreement between the parties is persuasive evidence of intent." Yeates, 807 F.2d at 878 (citation omitted). In the case before us, the Agreement could not be more clear. The obligation is found in Article I of the Agreement which is entitled "Maintenance (Spousal Support)" and is consistently referred to as "maintenance" throughout the Agreement. Article III of the Agreement separately addresses the property settlement and includes a cash payment by Defendant to Plaintiff over a two year period which is not at issue in this case. In addition, the Agreement expressly states that the obligation is "for the support of [Plaintiff] and [is] not in lieu of or partially in lieu of property division." Thus, the Agreement provides compelling evidence that the parties intended the obligation as maintenance.
 
 
 18
 In Tilley, which we cited with approval in Yeates, the Fourth Circuit held that a bankruptcy court's finding that a debtor's obligation to his former spouse was intended as support despite an agreement's identification of the obligation as property settlement was clearly erroneous. Id. at 1078. Like the Agreement at issue in the present case, the agreement in Tilley "did more than simply label payments as alimony or property settlement; [i]t exhibited a structured drafting that purported to deal with separate issues in totally distinct segments of the document." Id. at 1077-78. While the Tilley court recognized, as we have here, that "the agreement could not ... be determinative on the issue," the court concluded that it "erected a substantial obstacle" for the party challenging its express terms to overcome. Id. at 1078.
 
 
 19
 The present case is the mirror image of Tilley. In Tilley, the debtor's former spouse was challenging the terms of the agreement, and she testified that she intended at the time of the divorce that the obligation would provide her a certain level of support for her legitimate needs. Id. As the court recognized, however, "virtually nothing" in the former spouse's testimony "illustrate[d] the shared intent of both parties." Id. Here, in the case before us, the testimony of Defendant, his divorce attorney, and his accountant is no different than the testimony of the former spouse in Tilley. While it may provide some evidence of Defendant's subjective intent, it provides no evidence of the parties' shared intent. Such post hoc testimony, standing alone, is insufficient to overcome the "substantial obstacle" posed by the Agreement's clear expression of the parties' shared intent.
 
 
 20
 Notwithstanding the Agreement's clear expression of the parties' intent, Defendant points us to several provisions of the Agreement which, he argues, are characteristic of property settlement. The Agreement's provision that the obligation would survive Plaintiff's remarriage is indicative of a property settlement, see Sylvester, 865 F.2d at 1166; Goin, 808 F.2d at 1393, as is the provision precluding modification of the obligation due a change in the parties' financial circumstances. See Shaver, 736 F.2d at 1316. However, the fact that the obligation survives Plaintiff's remarriage is countered by the obligation's termination upon Plaintiff's death which is consistent with a support obligation. See Sylvester, 865 F.2d at 1166; Goin, 808 F.2d at 1393. Nor does the obligation's lack of modifiability control. In In re Williams, 703 F.2d 1055 (8th Cir.1983), the Eighth Circuit recognized that the obligation was designated as property settlement "in order to insulate the ... obligation from modification in the future under the state domestic-relations law doctrine that support obligations may be changed if the parties' circumstances change." Id. at 1058. Nonetheless, this lack of modifiability did not control as the court affirmed a bankruptcy court's finding that the obligation was support despite the parties' labeling of the obligation as "property settlement" in the divorce decree. Id. at 1057-58. Thus, neither of these factors is sufficient to overcome the clear expression of the parties' intent exhibited in both the language and structure of the Agreement.[5]
 
 
 21
 Defendant also notes that the obligation could be modified due to a change in the tax laws and that his obligation was conditioned on his continuing ability to deduct the payments under federal and state tax laws. It is undisputed that Defendant was motivated, at least in part, by the tax benefits that would accrue to him by designating the obligation as maintenance. However, in order for Defendant to have deducted the payments under federal and state tax laws, which he did, the payments must be alimony or separate maintenance payments. See 26 U.S.C. §§ 62(a)(10), 71, 215 (West 1988). See also Colo.Rev.Stat. § 39-22-104 (1992) (state income tax based on percentage of federal taxable income). The fact that the obligation was modifiable due to a change in tax laws and was conditioned on Defendant's continuing ability to receive the tax benefit is not evidence that the obligation was intended as property settlement; on the contrary, Defendant's reaping of the tax benefit and Plaintiff's simultaneous incursion of the tax liability strengthens Plaintiff's position that the parties intended the obligation as maintenance.[6] Cf. Tilley, 789 F.2d at 1078 n. 3 (debtor's treatment of obligation as non-deductible expense strengthened debtor's position that obligation was intended as property settlement).
 
 
 22
 In addition to the persuasive evidence of intent provided by the Agreement, the surrounding circumstances at the time of the parties' divorce strongly indicate that the obligation was intended as maintenance. See Yeates, 807 F.2d at 878 (determination of parties' intent "must be made by looking at the substance of the agreement viewed in the crucible of surrounding circumstances") (quotation omitted). At the time of the parties' divorce, Plaintiff had no job, no marketable skills, little education, a health condition which limited her ability to work, no income, and monthly living expenses of $4,165. Defendant, on the other hand, was employed as a mortgage banker, had a monthly income of $14,850, and monthly living expenses of $3,795. Plaintiff's obvious need for support at the time of the divorce is enough to presume that the obligation was intended as support even when it is otherwise identified in an agreement between the parties as property settlement. See Goin, 808 F.2d at 1392; Shaver, 736 F.2d at 1316. See also Yeates, 807 F.2d at 879 ("spouse's need for support is a very important factor in determining the intent of the parties"). As the Eighth Circuit noted in Williams, "the crucial issue is the function the award was intended to serve." 703 F.2d at 1057 (citations omitted). Thus, such a presumption is proper regardless of the label attached to the obligation either in the settlement agreement or in the parties' own minds. When, as here, the spouse's obvious need for support is consistent with the unambiguous expression of the parties' intent in an agreement, the presumption is even more compelling.
 
 
 23
 In light of the clear expression of the parties' intent exhibited by the language and structure of the agreement, the parties' placement of the tax burden, and Plaintiff's obvious need for support, we are "left with the definite and firm conviction" that the bankruptcy court erred in alternatively finding that the parties intended the obligation as property settlement. See Anderson v. City of Bessemer, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quotation omitted). See also Hall v. Vance, 887 F.2d 1041, 1043 (10th Cir.1989). Accordingly, the bankruptcy court's alternative finding is clearly erroneous.
 
 
 24
 This does not end the inquiry because Plaintiff, as the party seeking nondischargeability of the obligation, also has the burden of proving that the obligation was in substance support. Because the burden was on Plaintiff to establish both that the parties intended the obligation as support and that the obligation was in substance support, and, in the bankruptcy court's view, Plaintiff could not establish intent, the bankruptcy court never reached the second part of the inquiry. See Tilley, 789 F.2d at 1078 n. 4 ("[i]ntent clearly remains the threshold that must be crossed before any other concerns become relevant"). Nonetheless, because the pertinent facts are undisputed, we do not hesitate to reach the issue ourselves. See In re Golf Course Builders Leasing, Inc., 768 F.2d 1167, 1169 (10th Cir.1985) (when facts are undisputed, "the reviewing court is only concerned with the legal conclusions to be drawn from the facts as found").
 
 
 25
 The critical question in determining whether the obligation is, in substance, support is "the function served by the obligation at the time of the divorce." In re Gianakas, 917 F.2d 759, 763 (3d Cir.1990). This may be determined by considering the relative financial circumstances of the parties at the time of the divorce. We recognized as much in Yeates in relying on the former spouse's "dire financial circumstances at the time of the divorce" to affirm the district court's finding that the debt was in the nature of support. 807 F.2d at 879. Similarly, in Goin, we recognized that a separate child support award was insufficient "to provide the spouse and children with the standard of living to which they had grown accustomed," and relied on this fact in affirming the bankruptcy court's finding that the obligation was in the nature of support. 808 F.2d at 1393. And, in Sylvester, we recognized that "the provisions in the agreement in dispute had the actual effect of providing support to [the spouse]--enabling her to maintain a home ... and have a monthly income," in affirming the bankruptcy court's finding that the obligation was in the nature of support. 865 F.2d at 1166 (quotations omitted). Thus, if an obligation effectively functions as the former spouse's source of income at the time of the divorce, it is, in substance, a support obligation.[7]
 
 
 26
 As earlier stated in our discussion of the parties' intent, Plaintiff had an obvious need for support at the time of the divorce. She had no income and her employment opportunities were limited by her health condition and lack of education. Defendant was clearly in a position to provide support. Given these facts, it is clear that Defendant's obligation to Plaintiff served as a source of her support at the time of the parties' divorce, and, therefore, was in substance a support obligation.
 
 
 27
 AFFIRMED.
 
 
 
 *
 The Honorable Harlington Wood, Jr., Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation
 
 
 [1]
 Defendant agreed to pay Plaintiff $3,333.33 per month during the first five years; $2,500 per month during the sixth year; $2,083.33 per month during the seventh year; and $1,666.66 per month during the eighth year. The agreement further provided as follows: Defendant would procure life insurance to secure his obligation; Defendant's obligation would terminate upon Plaintiff's death but would continue regardless of whether Plaintiff remarried; Defendant's obligation was contractual in nature and could not be modified except in the event of a change in the applicable tax laws nor could it be revived at its expiration; and Defendant's obligation was conditioned upon the deductibility of the payments from his gross income and the taxability of the payments to Plaintiff
 
 
 [2]
 The bankruptcy court made several findings of fact concerning the changed circumstances of the parties since their divorce. These findings are irrelevant to whether Defendant's debt was actually in the nature of alimony, maintenance or support. See Sylvester v. Sylvester, 865 F.2d 1164, 1166 (10th Cir.1989) (former spouse's lack of present need for support is not grounds to discharge support obligation)
 
 
 [3]
 The bankruptcy court stated that In re Goin, 808 F.2d 1391 (10th Cir.1987) (per curiam), which recognized that "a bankruptcy court must look beyond the language of the decree to the intent of the parties and the substance of the obligation," id. at 1392 (citation omitted), could not be reconciled with Yeates
 
 
 [4]
 We recognized, however, that "if the agreement is ambiguous, then the court must determine the parties' intentions by looking to extrinsic evidence." Yeates, 807 F.2d at 878 (citations omitted)
 
 
 [5]
 Defendant points to several other provisions in the Agreement which he argues are characteristic of a property settlement. The fact that Defendant was required to make monthly payments, if anything, is indicative of a support obligation. See, e.g., Sylvester, 865 F.2d at 1166; Goin, 808 F.2d at 1393. While the obligation's termination after eight years regardless of Plaintiff's need might be construed as indicative of a property settlement, it is equally indicative of a temporary award of support in order to allow Plaintiff to gain the education or skills necessary to support herself. See Forsdick, 812 F.2d at 803 ("[t]ime-limited alimony ... would be an appropriate award for a spouse with a fair expectation of eventual employment but with a temporary need for support until such expectations can be met"). The fact that Defendant's obligation did not provide Plaintiff with all of her monthly living expenses at the time of the divorce is largely irrelevant as it is not uncommon that spouses must reduce their standard of living following a divorce. Similarly, the fact that Defendant was required to secure the obligation with life insurance is irrelevant. See Tilley, 789 F.2d at 1078 n. 3 (no significance in the fact that obligation held to be property settlement was secured by life insurance). The contractual nature of the payments is not indicative one way or the other as Colorado permits parties to enter into written separation agreements containing provisions for both maintenance and property settlement. See Colo.Rev.Stat. § 14-10-112(1) (1992). See also Draper v. Draper, 790 F.2d 52, 54 (8th Cir.1986) (per curiam) (contractual nature of obligation did not control whether obligation was dischargeable). Thus, we do not attach the same significance to these factors as Defendant, and, even if we did, we doubt that they would be sufficient to overcome the clear expression of the parties' intent exhibited by both the language and structure of the agreement
 
 
 [6]
 In Matter of Davidson, 947 F.2d 1294 (5th Cir.1991), the Fifth Circuit reversed the bankruptcy court's finding that a debtor's obligation to his former spouse was in the nature of property settlement rather than alimony and held that, as a matter of law, a debtor could not discharge in bankruptcy an obligation to a former spouse where the debtor had treated the obligation as alimony for tax purposes. Id. at 1296-97. On facts remarkably similar to this case, the Fifth Circuit relied on a theory of "quasi-estoppel" which "forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects." Id. at 1297 (citations omitted). The Davidson court reasoned as follows:
 To allow a spouse to set up an intricate and unambiguous divorce settlement, carefully distinguishing certain periodic payments, called alimony, from the division of marital property, and consistently taking advantage of this characterization for tax purposes, only then to declare that the payments truly represented a division of property, would be a legal affront to both the bankruptcy and tax codes. To uphold the discharge of those payments in bankruptcy would reward an admitted manipulation tantamount, at best, to deception.
 Id. This reasoning would seem to apply with equal force to the facts of the present case, and we, like the Fifth Circuit have a strong aversion to sanctioning a sham transaction which we would effectively be doing if we accepted Defendant's argument. Nonetheless, § 523(a)(5) requires federal courts to look beyond the labels. Given that a legal consequence of labeling an obligation to a former spouse support or property settlement is the placement of the tax burden, § 523(a)(5) might, in the proper case, require a federal court to sanction such a transaction.
 
 
 [7]
 In addition to being extremely relevant in the determination of the substance of the obligation, a spouse's need for support at the time of the divorce is sufficient to presume that the parties' intended the obligation as support. Goin, 808 F.2d at 1392. See supra. Consequently, this factor becomes a critical inquiry and may, in some cases, be dispositive on whether an obligation to a former spouse is nondischargeable under § 523(a)(5)