In re William J. SARGIS a/k/a Bill Sargis, a/k/a William Joseph Sargis, SSN 013 40 0951, Debtor.

Patricia ALPER–COHN, Plaintiff,

v.

William J. SARGIS a/k/a Bill Sargis, Defendant.

Bankruptcy No. 95 15229 PAC.
Adv. No. 95 1547 PAC.

United States Bankruptcy Court,
D. Colorado.

June 28, 1996.

Rosanne M. Hall, Hall & Fiflis, P.C., Denver, Colorado, for plaintiff.

Joseph G. Rosania, Denver, Colorado, for defendant.

ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF CERTAIN OBLIGATIONS UNDER 11 U.S.C. § 523(a)(5)

PATRICIA A. CLARK, Bankruptcy Judge.

The matter before the Court is the complaint filed by Patricia Alper–Cohn against her former husband William Sargis to determine whether certain obligations are dischargeable under Section 523(a)(5) of the Bankruptcy Code. Mr. Sargis filed an answer thereto and a trial was held.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I).

Briefly, there are three obligations that Ms. Alper–Cohn asserts should not be discharged. The obligations arise from the parties' Separation Agreement (Agreement) which became the final order in their dissolution proceeding. First, are the payments for 60 months which were designated by the parties as alimony and treated as such for tax purposes. Second, are the payments for 48 months on a Mercedes 560 SEL lease which were designated by the parties as part of the property division. Finally, is the obligation arising from the Agreement's provision to award attorneys fees incurred by the non-defaulting party plus interest for enforcement of the Agreement.

Mr. Sargis claims that the three obligations were actually part of the property settlement as Ms. Alper–Cohn has not shown that her economic circumstances required alimony payments.

The Court finds the following facts:

1. The parties were married in 1982. They entered into an antenuptial agreement which provided that neither party would have a claim upon the separate property of the other in the event of divorce. Among other things, Ms. Alper–Cohn lists cash, stocks and bonds held through Thompson, McKinnon

Securities, Inc. valued at $115,527.06 as of May 27, 1982.[1]

2. Prior to the marriage, Ms. Alper–Cohn worked as the public relations director for the Hyatt Hotel in Washington, D.C. During the marriage she had her own consulting business and eventually worked for Mr. Sargis' construction business.

3. The parties divorced on December 23, 1992. They have no children. The Agreement dated July 23, 1991 was made an Order of the Court.

4. Both parties were represented by counsel during the negotiation of the Agreement.

5. The relevant provisions of the Agreement are:

2. Commencing on January 1, 1991 and continuing on the fifth day of each and every month thereafter, the Husband shall pay to the Wife, without demand and without deduction, spousal support and alimony (hereinafter "alimony") in the amount of One Thousand Six Hundred Sixty–Six Dollars and Sixty–Six Cents ($1,666.66) per month. Said alimony shall be payable by the Husband to the Wife for each and every month from January 5, 1991 to and including December 31, 1995. Alimony shall terminate only in the event of the death of the Wife, and shall not terminate in the event of the death of the Husband or in the event of the Wife's remarriage. From and after January 1, 1994, the Husband may prepay the remaining monthly payments of alimony. In the event the Husband makes such prepayment, the amount paid by the husband to the Wife shall be calculated based upon the number of months between the date of the prepayment and December 31, 1995, multiplied times $1,666.66.

3. The alimony described in paragraph 2 hereof shall not be subject to any modification, by Court or otherwise, and each party hereby waives the right to modification of alimony, as set for the in Maryland Family Law Annotated Code, Section 8–103 (1984 ed., as amended).

Under the section designated as Income Tax Matters:

13. The parties agree that the alimony paid by the Husband to the Wife under the terms of Paragraph 2 hereof shall be includable in the income of the Wife under Section 71 of the Internal Revenue Code and deductible by the Husband under Section 215 of the Internal Revenue Code. All other sums paid to or on behalf of the Wife by the Husband shall not be includable in the income of the Wife; in the event any other sums paid to or on behalf of the Wife by the Husband are includable in the income of the Wife, the husband shall indemnify and hold harmless the Wife from any such additional liability, including interest and penalties.

Under the section designated as Property of the Parties:

5. .... The Mercedes shall be the Wife's sole and separate property, and the Husband shall be responsible for paying timely the note payments, as they become due. In the event the Wife sells or otherwise disposes of the Mercedes automobile, or if the note on the Mercedes is prepaid for any other reason, the Wife shall be entitled to retain as her sole and separate property the proceeds resulting from the sale or other disposition of the Mercedes automobile, and the Husband shall pay to the Wife the sum of $875 per month (which is the current monthly payment on the note secured by the Wife's Mercedes automobile); such payments shall continue to be made by the Husband to the Wife to and including December 31, 1994 (which is the month the note on the Wife's Mercedes would have been discharged if it had not been prepaid).

Under the section designated as General Provisions:

15. In the event that either party defaults in his or her obligations under the terms of this Agreement, or breaches this Agreement, the breaching party or defaulting party, as the case may be, shall be respon-

---

1. The testimony at the trial indicated that at the time of the divorce, Ms. Alper–Cohn continued to hold that property through the Thompson, McKinnon Securities, Inc. firm, but she was unaware of its value.

sible for reasonable counsel fees and costs incurred by the other party in enforcing this Agreement, including any of the terms or provisions hereof, and in seeking damages under this Agreement.

Paragraph 19 of the Separation Agreement provides that upon breach of the Agreement "interest shall become immediately due and payable on all amounts not timely paid at 100 basis points over the Prime Rate," as published in the *Wall Street Journal* as of the date of default.

6. During their marriage the business of Sargis and Jones Construction Company was formed. Ms. Alper–Cohn worked there. In 1989 her salary was $73,307. The parties separated in 1989.

In 1990, Mr. Sargis received $243,926 in wages from Sargis and Jones and in 1991 he received $169,167 in wages.

7. In 1990, Ms. Alper–Cohn's adjusted gross income was $157,316. It was $131,772 in 1991.

8. Mr. Sargis made all of the payments for 2 years on the obligations under the Agreement. He paid nothing after December 1992.

9. The principal amount allegedly owed by Mr. Sargis for alimony is $59,999.76 (36 months × $1,666.66 per month).

10. The amount allegedly due for the unpaid Mercedes payment is $21,000 ($875 per month × 24).

11. Ms. Alper–Cohn by way of devise from her grandfather has a ⅛th interest in small fractional interests in real estate, joint ventures and partnerships. The distribution of the trust corpus will occur upon the death of Ms. Alper–Cohn's grandmother. Her interest in the foregoing entities has been valued at $413,137 (in a 1988 appraisal). In addition, the other joint ventures in which the plaintiff holds interest have restrictions on sale and her share combined with those acquired from her grandfather is no more than 1.875% in any venture.

12. In the Separation Agreement, Ms. Alper–Cohn received the family home with mortgages totaling $785,000. (Based upon certain letters between the attorneys in the dissolution proceeding, it appears there may have been around $100,000 in equity in the house).

13. On October 31, 1989, Mr. Sargis' stock in Sargis and Jones was valued at $716,500. The entire business was valued at $1,194,000. By December 23, 1991, Mr. Sargis owned all of the stock.[2]

14. Mr. Sargis received dividend income in 1991 of $10,864.

15. Mr. Sargis had several vehicles during the marriage. He owned a Ferrari which was sold in 1989 for a $150,000 profit. He sold his Jaguar in 1991 for $3,000. At the time of the divorce, he drove a Porsche owned by Sargis and Jones. Sargis and Jones also owned a race car.

16. For her 1991 taxes, Ms. Alper–Cohn paid federal and state income tax of $17,543. Her net income was $181,921 (including $20,000 in alimony payments). She also received $20,000 from her parents which she called a loan, but the documentation indicates that it was a gift and that a total of $40,000 was to be disbursed to her. She also received a gift of $10,000 from her grandmother. She made cash contributions to charity in the amount of $2,256.[3] She had home mortgage payments of $114,000 and car payments of $10,500 for total loan payments of $124,500. In addition, she maintained and insured the home and grounds, fed and clothed herself, traveled, paid for club memberships and other daily living expenses.

17. Ms. Alper–Cohn did not present documentary or clear evidence on the value of her non-marital assets at the time of the divorce or separation.

Ms. Alper–Cohn argues that the monthly payments of $1,666.66 were intended to be alimony. To support such contention she asserts that the payment of spousal support and alimony, is separate from the section entitled property of the parties; the payment obligations terminate on her death; the payments are monthly; Maryland's Family Code

---

2. Sometime in 1992, a major secured creditor seized most of the assets of Sargis and Jones.

3. In 1992, she made cash contributions to charity of $3,509.

provides that alimony can be awarded for an indefinite period only in limited circumstances; letters from Mr. Sargis' divorce attorney indicate that he was going to pay alimony and trade the house for the business (See Exhibit L page 2 and Exhibit N); and Mr. Sargis took the payments as adjustments to his income on his 1991 and 1992 tax returns.

As for the car payments, Ms. Alper–Cohn maintains that Mr. Sargis' agreement to make the payments was a support obligation. The $875 monthly obligation was to be paid whether she owned the car or not. Thus, she contends that it was further support for her.

Relevant factors asserted by Ms. Alper–Cohn under Maryland law which are used in making an award of alimony are: the standard of living established during the marriage; the ability of the party paying alimony to meet the needs of the alimony recipient and his or her own; agreement between the parties; financial needs and resources of each and the nature and amount of financial obligations of each party.

Mr. Sargis argues that the Agreement was a division of property arrived at by negotiating the fair market value of the stock of Sargis and Jones at $200,000 and dividing it in half. Furthermore, he contends that it is federal bankruptcy law which in employed, not state domestic relations law to determine whether the obligations are alimony or a division of property. *In re Young*, 35 F.3d 499 (10th Cir.1994). He maintains that the factors which weigh heavily in favor of finding that a property division was intended are: the parties were not married for a significant period of time (married in 1982, separated in 1989 and divorced in 1991); there are no children to support; the obligation does not terminate upon remarriage; the obligation is for a definite amount for a definite period of time; the obligation may not be modified; the plaintiff was in her early forties at the time of the divorce and in good health; the

economics used to establish the obligation was the value of defendant's stock interest in Sargis and Jones. Finally, Mr. Sargis contends that in addition to the payments not being intended as support, a consideration of the surrounding facts and circumstances, especially financial, discloses that the plaintiff did not need support at the time of the divorce.

The relevant statute for resolution of the dispute is 11 U.S.C. § 523(a)(5). That provision denies the discharge of an obligation:

> to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—(A) such debt is assigned to another entity, voluntarily by operation of law or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or (B) such a debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony maintenance or support.[4]

■ *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717 (10th Cir.1993), is the leading case in this jurisdiction for Section 523(a)(5) actions. Following other Tenth Circuit decisions, the Court held that federal bankruptcy law, not state law is used to determine whether an obligation to a former spouse is in the nature of support. It also established a two part inquiry to resolve the issue. First, the court must divine the spouses' shared intent as to the nature of the payment. *Id.* at 723. This inquiry is not limited to the words of the settlement agree-

4. The rationale behind Section 523(a)(5) is explained in *Shaver v. Shaver (In re Shaver)*, 736 F.2d 1314, 1316 n. 3 (9th Cir.1984):
   The rationale for the exemption from discharge for support obligations is threefold: the protection of the spouse who may lack job skills or who may be incapable of working, the protec-

tion of minor children who may be neglected if the custodial spouse entered the job market, and the protection of society from an increased welfare burden that may result if debtors could avoid their familial responsibilities by filing for bankruptcy.

ment, even if unambiguous. Second, if the court decides the payment was intended as support, it must then determine that the substance of the payment was in the nature of support at the time of the divorce. The surrounding facts and circumstances, especially financial, lend support to such a finding.

■ The party seeking to hold the debt nondischargeable has the burden of proving by a preponderance of the evidence that the parties intended the obligation as support and that the obligation was, in substance, support. *Id.*

■ The intent issue involves the consideration of many factors. *Sampson* discusses those factors and cases applying them. *Id.* at 723–724. The written agreement is evidence of intent. Also, if the obligation survives remarriage that is indicative of an intended property Settlement, as is a provision precluding modification of the obligation due to a change in financial circumstances. The fact that the obligation survives remarriage is countered by the termination of the obligation upon death which indicates support. Obtaining a tax benefit while the spouse receiving payments incurs the tax liability indicates the parties intended the obligation as maintenance.

■ As for the substance of the support, according to *Sampson,* the critical question is "the function served by the obligation at the time of the divorce." (Citation omitted). This is determined by considering the relative financial circumstances of the parties at the time of the divorce. Some consideration is also given to the standard of living to which the party is accustomed. It is noteworthy that in the 10th Circuit case of *In re Goin,* 808 F.2d 1391 (10th Cir.1987), which actually considered the living standard, the payments certainly would not have allowed a very high standard of living—$5,000 annually plus $350 per month child support. The determinative point is "if an obligation effectively functions as the former spouse's source of income at the time of the divorce, it is, in substance, a support obligation." *Sampson,* 997 F.2d at 726. In *Sampson,* the court looked at the plaintiff's need at the time of the divorce, she had no income and her employment opportunities were limited by her health condition and lack of education. Her husband was in a position to provide support. Thus, it concluded that the defendant's obligation served as her source of support at the time of the divorce and was in substance a support obligation.

■ If a determination is made that either or both the "alimony" and car payments are support, then, the Court must consider whether the attorneys fees to collect them are dischargeable. The general rule is that, absent a federal statute or enforceable contract providing for fees, each party must bear his own attorney fees. *Alyeska Pipeline Service v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). In the instant case, the parties previously agreed in the Agreement that attorneys fees would be paid by the defaulting or breaching party in an action to enforce the Agreement. *See generally Colbert v. Colbert (In re Colbert),* 185 B.R. 247 (Bankr.M.D.Tenn.1995). Hence, if Ms. Alper–Cohn is successful in any portion of this action, the corresponding reasonable fees would also be non-dischargeable.

■ The first question is whether the parties intended for the payments designated as alimony payment to be support. The Court finds that the following factors could constitute a basis for determining that at the time of the divorce, the parties intended the $1,666.66 monthly payments as support payments. First, the parties consistently referred to the payments as alimony; second, while the obligation survives remarriage, the fact that it terminates upon death indicates support; third, for tax purposes the payments were treated as alimony; and finally, based upon correspondence between the divorce counsel for the parties, the monthly payments are discussed in conjunction with references to the home and payments on the home. The latter indicates that the payments were thought necessary to provide a home for the plaintiff. These factors override the provision precluding modification of the obligation (which is an indication of a property settlement). Moreover, the Court is not convinced, nor does the evidence sup-

port Mr. Sargis' assertion that the $100,000 in alimony payments actually represented an exchange for the plaintiff not claiming a one-half interest in Sargis and Jones. The valuation indicates Mr. Sargis' interest in the company at the time of the separation was over $700,000. Based upon the time value of money it would only be a small fractional interest if $100,000 was paid over 5 years.

The next question is whether the function served by the obligation at the time of the divorce was support. Looking at the surrounding facts and circumstances, especially financial, the Court finds that the substance of the payment was not in the nature of support at the time of the divorce. The plaintiff appears to be a well-educated, intelligent woman who was in her late thirties or early forties at the time of the divorce. While Mr. Sargis was in a financial position to provide support, Ms. Alper–Cohn had significant income and the ability to earn additional income, at least the $20,000 per year that she was to receive for five years.

■ Ms. Alper–Cohn could have maintained the standard of living to which she was accustomed through meaningful employment. Although she could no longer work for Mr. Sargis, she had the ability and experience to obtain a job. The circumstances of the instant case are not consistent with the rationale for the exemption from discharge for support obligations which are the protection of the spouse who may lack job skills or who may be incapable of working, the protection of minor children who may be neglected if the custodial spouse entered the job market, and the protection of society from an increased welfare burden that may result if debtors could avoid their familial responsibilities by filing for bankruptcy.

Finally, it was Ms. Alper–Cohn's burden of proving by a preponderance of the evidence that the parties intended the obligation as support and that the obligation was, **in substance, support**. Ms. Alper–Cohn failed to provide the Court with either sufficient, credible or reliable evidence as to the value of all of her assets at the time of the divorce. Hence, the Court could not make the critical determination of whether the financial circumstances of the parties made the pay-

ments in substance support. Since Ms. Alper–Cohn did not meet her burden on the issue, the Court concludes that the monthly alimony payments were not in the nature of support.

■ The next obligation which Ms. Alper–Cohn claims should not be discharged is the obligation to pay the amount of the lease payments on the Mercedes 560 SEL. The Court finds that the parties did not intend for the lease payments to be support. Not only were the payments listed in the property division section, but the fact that this was arrangement was done because Ms. Alper–Cohn assisted Mr. Sargis in acquiring cars during the marriage lends support to the payments being viewed as a property settlement. The need to pay her whether she retained the car or sold it indicates a property settlement. Also, the parties did not treat the car payment as alimony for tax purposes. Hence, it does not appear to have been intended as a support obligation.

Notwithstanding the parties' intent, for the same reasons as were discussed in the analysis of the monthly alimony payment, the Court finds that the car payment was not in the nature of support.

In sum, the monthly "alimony" payments and car payments are not support and therefore are discharged. Based upon the discharge of those obligations, the claim for attorneys fees is moot.

ORDERED that the monthly payments of $1666.66 and the monthly car payments are not support and are discharged.