Filed 9/19/96

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

In re: HERBERT LEE SHERRELL,
also known as Herbert L. Sherrell, also
known as H.L. Sherrell, also known as
Lee Sherrell,

        Debtor,

_____

SALLIE J RUSSOM, formerly known
as Sallie J. Sherrell,

        Appellee,

v.

HERBERT LEE SHERRELL,

        Appellant.

No. 95-6165
(D.C. No. CIV-94-1838-A)
(W.D. Okla.)

ORDER AND JUDGMENT[*]

Before BRORBY, BARRETT, and EBEL, Circuit Judges.

_____

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Defendant and debtor Herbert Lee Sherrell appeals from a district court order denying discharge of a debt and remanding to the bankruptcy court "for entry of judgment consistent with th[at] order."[1] Appendix to Appellant's Brief (App.) at 20. Plaintiff Sallie J. Russom brought this adversary proceeding to preclude the discharge of an $82,500 arrearage in payments due under the parties' divorce settlement, which she alleged were spousal support and thus excepted from discharge pursuant to 11 U.S.C. § 523(a)(5)(B). The bankruptcy court found the payments to be a form of property division, and granted Mr. Sherrell discharge of the debt. On appeal, the district court held the payments were for support and reversed. We affirm the judgment of the district court.

---

[1] The district court's remand for entry of a judgment of nondischargeabilty, which involves neither de novo hearings, additional factfinding, nor the determination of the amount of a disputed claim (the debt had already been reduced to judgment in state court), is properly characterized as "ministerial" and, therefore, appealable under established principles summarized in Balcor Pension Investors V v. Wiston XXIV Ltd. Partnership (In re Wiston XXIV Ltd. Partnership), 988 F.2d 1012, 1013 (10th Cir. 1993). See, e.g., Jones v. Jones (In re Jones), 9 F.3d 878, 879-80 (10th Cir. 1993)(holding remand for entry of order declaring debt nondischargeable final for purposes of appeal).

"Whether an obligation to a former spouse is actually in the nature of support is a factual question subject to a clearly erroneous standard of review." Sampson v. Sampson (In re Sampson), 997 F.2d 717, 721 (10th Cir. 1993). While we ultimately agree with the analysis expressed by the district court, the object of our review is still the determination of the bankruptcy court acting in its role as factfinder. See Sender v. Johnson (In re Hedged Invs. Assocs., Inc.), 84 F.3d 1267, 1268 (10th Cir. 1996). Accordingly, the "district court's reversal of [the] bankruptcy court's factual finding [neither] permits [n]or requires this Court to reject such a finding, unless we are independently convinced . . . that it is in fact 'clearly erroneous.'" Equitable Life Assurance Soc'y v. Sublett (In re Sublett), 895 F.2d 1381, 1384 n.5 (11th Cir. 1990); see Sampson, 997 F.2d at 721 (noting "our independent review" of bankruptcy court findings under clear error standard).

Analysis of a debt for purposes of § 523(a)(5) entails "a dual inquiry into both the parties's intent and the substance of the obligation." Sampson, 997 F.2d at 723. "The party seeking to hold the debt nondischargeable has the burden of proving by a preponderance of the evidence that the parties intended the obligation as support and that the obligation was, in substance, support." Id. However, with respect to the first step of the inquiry, "'[a] written agreement between the parties is persuasive evidence of intent,'" id. (quoting In re Yeates,

807 F.2d 874, 878 (10th Cir. 1986)), and, while not conclusive, a clear specification therein of the nature of the obligation "'erect[s] a substantial obstacle' for the party challenging its express terms to overcome," id. (quoting Tilley v. Jessee, 789 F.2d 1074, 1078 (4th Cir. 1986)).  The second step of the § 523(a)(5) inquiry looks to the actual, practical effect of the payment.  "Thus, if an obligation effectively functions as the former spouse's source of income at the time of the divorce, it is, in substance, a support obligation."  Id. at 726 (footnote omitted).  Both intent and substance are determined as of the time of the divorce, when the disputed obligation arose.  Id. at 723, 726.

The material aspects of the settlement agreement in this case are, in language and structure, essentially indistinguishable from their counterparts in Sampson.  For example, (1) Article IV of the agreement expressly commits Mr. Sherrell "to pay to the wife support alimony;" (2) consistent with this purpose, Article IV creates an ongoing monthly financial obligation ceasing on Ms. Russom's death (where the obligation deviates from one typical characteristic of support, in extending beyond remarriage, the agreement explicitly acknowledges the deviation); and (3) the agreement clearly designates and separately addresses the division of property in other articles.[2]  Compare App. at 26-30 with Sampson,

---

[2]      Indeed, just as in Sampson, one of these provisions (Article III-E) grants a separate "cash property settlement" payable in four installments, App. at 28,
(continued...)

-4-

997 F.2d at 723-24.  "Thus, the Agreement provides compelling evidence that the parties intended the obligation as [support]."  Sampson, 997 F.2d at 723.

Thus far, our analysis not only follows the reasoning of the district court, but also agrees, at least roughly, with the bankruptcy court, which conceded that "we have here, persuasive evidence, this agreement says what it is."  See App. at 203.  Beyond this juncture, however, the two courts sharply diverged.  The district court invoked Sampson's "substantial obstacle" principle (aptly likened to a rebuttable presumption), assessed the extrinsic evidence offered by Mr. Sherrell to rebut the parties' presumed intent to create a support obligation, found such evidence deficient for various reasons, and held that "the bankruptcy court was clearly erroneous in concluding the parties' [sic] intended the obligation to be in the nature of property settlement."  Id. at 15-18.  In contrast, the bankruptcy court never acknowledged the "substantial obstacle" principle, treated the parties' expressed intention as one factor to be assessed cumulatively with the rest of the (circumstantial) evidence, and concluded that the record failed to establish a support obligation.  Id. at 203-207.

On appeal, Mr. Sherrell contends the district court flouted the clear error standard of review, improperly shifted the burden of proof, and, as a result,

---

[2](...continued)
which would render Article IV's cash obligation inexplicably duplicative if it were not intended, in contrast, as support.

wrongly reversed bankruptcy court fact findings adequately supported by the evidentiary record. From our previous discussion of the principles governing this action and the district court's adherence thereto, our reasons for rejecting the first two, legal objections should already be clear. However, we have yet to determine whether, in any event, the bankruptcy court's finding that the parties intended to, and did, create a dischargeable property obligation must be sustained in light of the circumstantial evidence in the record.

The evidence relied on by the bankruptcy court falls primarily into three categories, none of which rebuts the presumption of support raised by the express language of the agreement. First, the court noted Ms. Russom's return to work and the collapse of Mr. Sherrell's business. Such post-divorce changes in the parties' circumstances are irrelevant to the intent embodied in a divorce agreement. Sampson, 997 F.2d at 720 n.2. Second, the court referred to Mr. Sherrell's retrospective characterization of his intent regarding the parties' agreement. However, the inquiry into the parties' mutual intent "does not turn on one party's post hoc explanation as to his or her state of mind at the time of the agreement, even if uncontradicted." Id. at 723 ("Such post hoc testimony, standing alone, is insufficient to overcome the 'substantial obstacle' posed by the Agreement's clear expression of the parties' shared intent."). Third, the court emphasized that Ms. Russom, though unemployed and without income at the time

of the divorce, was not in the same desperate straits as the impaired plaintiff in Sampson.  While our record may lack some of the extra corroboration for the presumed support obligation present in that case, see id. at 725 (plaintiff's "obvious need for support" sufficient to raise presumption of support obligation independently of agreement), that does not constitute the contrary evidence necessary to overcome the parties' express invocation of such an obligation, see id. at 723.  As the district court noted, Mr. Sherrell offered no explanation of the contradiction between his alleged intent and the clear language of the agreement he executed with the aid of counsel.[3]  See App. at 16; see also id. at 127.

The bankruptcy court specifically found that the Article IV payments, totaling $300,000 over the contemplated ten-year span, were intended as a (deferred) cash settlement of Ms. Russom's share of Mr. Sherrell's business.  In addition to the evidentiary problems already cited, this finding is undercut by several further considerations:  (1) the $300,000 figure is grossly disproportionate to the company's contemporaneous "book" value of $17,000,000; (2) if, as the bankruptcy court concluded, the parties truly intended to grant Ms. Russom a $300,000 share, no one explained why she was awarded a deferred sum the

---

[3]     In addition to executing the agreement, Mr. Sherrell separately signed his name in the margin of Article IV, "to indicate [he] had specifically read [it], because it contained that special language [of support]."  App. at 97.  He admits being aware of the distinction between property and support.  Id. at 102-03.

present value of which would not have approached that amount; and (3) as noted above, Article III-E of the parties' agreement already explicitly provided--and properly denominated--a "cash property settlement" for Ms. Russom, rendering such a characterization of Article IV implausibly duplicative.

"[W]e are left with the definite and firm conviction that the bankruptcy court erred in . . . finding that the parties intended the obligation as property settlement. Accordingly, the bankruptcy court's . . finding is clearly erroneous." Sampson, 997 F.2d at 725 (quotation omitted). This does not end our review, "as the party seeking nondischargeability of the obligation[] also has the burden of proving that the obligation was in substance support." Id. However, the substance of the obligation, i.e., the actual function it served when the parties divorced, id., is a straightforward matter on our undisputed facts.

At the time of the parties' divorce, the then-unemployed Ms. Russom was without independent income and, consequently, had to rely on the monthly payments from Mr. Sherrell for her living expenses. App. at 101-02, 150-52. "[I]f an obligation effectively functions as the former spouse's source of income at the time of the divorce, it is, in substance, a support obligation." Sampson, 997 F.2d at 726 (footnote omitted). Thus, the bankruptcy court also clearly erred when--apparently conflating the intent and substance inquiries, see App. at 206 (determining function of award "again, puts [the court] in a position of trying

-8-

to subjectively discern the parties [sic] intent")--it found the function of the obligation was "to provide [Ms. Russom] her beneficial interest in [Mr. Sherrell's] business," id.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

Entered for the Court

James E. Barrett
Senior Circuit Judge