**In re Tony Gene PUCKETT, Debtor.**

**Marilyn Sue PUCKETT a/k/a Susie Peterson, Plaintiff,**

v.

**Tony Gene PUCKETT, Defendant.**

Bankruptcy No. 96–16011–TS.
Adv. No. 96–1406–TS.

United States Bankruptcy Court,
W.D. Oklahoma.

Feb. 21, 1997.

Phillips, McFall, McCaffrey, McVay, & Murrah, Oklahoma City, OK, for Plaintiff.

L. David Pomeroy, Fuller, Tubb & Pomeroy, OK, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

JOHN TeSELLE, Chief Judge.

Plaintiff filed her adversary complaint November 8, 1996, asserting that Defendant's obligation to pay Plaintiff $37,800, which arises from the parties' divorce, constitutes alimony, maintenance, or support, and is therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(5). Debtor answered on December 6, 1996.

On December 18, 1996, Defendant filed his **Motion for Judgment on the Pleadings,** asserting that the obligation at issue constituted an equitable distribution of marital assets and not spousal support, thus is dischargeable in Defendant's bankruptcy. Plaintiff objected to the motion, arguing that she and Defendant intended those payments to be support alimony for her, and Defendant replied to Plaintiff's objection. The Court has reviewed the pleadings and applicable law, and rules as follows.

#### Undisputed Facts

Plaintiff and Defendant married on August 7, 1978. On March 11, 1994, the Circuit Court in Marion County, Florida, entered a Final Judgment of Dissolution of Marriage (hereinafter the "Dissolution Judgment"), terminating the parties' marriage effective February 23, 1994. Attached to the Dissolution Judgment and incorporated therein by reference is a Marital Settlement Agreement entered into by the parties on February 15, 1994 (hereinafter the "Settlement Agreement"). The Dissolution Judgment recites that the parties freely entered into the Settlement Agreement after making full disclosure and that the parties requested immediate entry of the Dissolution Judgment "in accordance with the property settlement agreement." Dissolution Judgment at 1. The Settlement Agreement is a comprehen-

sive twenty-eight page document containing, *inter alia,* the following pertinent provisions:

That throughout the negotiation, drafting, and execution thereof, both parties were represented by independent legal counsel. Settlement Agreement at 2.

That the Settlement Agreement "is intended to be a full and complete settlement of all matters arising or which could have been brought in [the parties' divorce] action, including a division of marital assets, provision for support of the Wife, and the care and support of the Parties' minor children." Settlement Agreement at 3.

That "[t]he Wife and Husband waive all rights to alimony for purposes of temporary and/or permanent support, whether permanent, periodic, lump-sum, or rehabilitative. The Wife agrees that no alimony for purposes of support, whether permanent, periodic[,] lump-sum, or rehabilitative, shall be paid from or to either spouse." Settlement Agreement at 4.

That "[a]s and for an equitable distribution of marital assets, and as and for payment of an interest in marital property, the Husband shall make payments to Wife" in accordance with a schedule set forth in the Settlement Agreement. Settlement Agreement at 15–16.

That each party has reviewed the Settlement Agreement and "fully understands the facts and has been informed as to his or her legal rights and obligations pursuant to the Laws of Florida and this Agreement. Each party is signing this Agreement freely and voluntarily, intending to be bound by it." Settlement Agreement at 25.

That the "Parties acknowledge that this Agreement constitutes the full, complete, and final settlement of all alimony rights,

property rights, liabilities, and other responsibilities between the Parties." Settlement Agreement at 26.

Defendant filed his Chapter 7 voluntary bankruptcy petition on August 7, 1996, seeking to discharge an obligation owed Plaintiff, arising from the parties' divorce, in the amount of $37,800.

### Applicable Law and Discussion

#### A. § 523(a)(5)(B)

■ Plaintiff brought this proceeding under § 523(a)(5)(B) of the Bankruptcy Code.[1] The leading case in this circuit addressing that section is *Sampson v. Sampson (In re Sampson),* 997 F.2d 717 (10th Cir.1993).[2] Pursuant to *Sampson,* the Bankruptcy Court must make a dual inquiry—first to determine the parties' intent, and second to determine the substance of the obligation. *Sampson,* 997 F.2d at 723 (citation omitted). Plaintiff, who is seeking a determination that the obligation at issue is nondischargeable, must prove by a preponderance of the evidence "that the parties intended the obligation as support and that the obligation was, in substance, support." *Id.* (citation omitted).

■ The initial inquiry this Court must make is whether the parties intended for this obligation to be in the nature of alimony, maintenance and support, or a property settlement. *Id.* The focus is on the parties' shared intent at the time the obligation arose, not on one or the other of the parties' after-the-fact explanation of what was intended at that time. *Id.* at 723 (citation omitted). While the Tenth Circuit charges this Court with the duty to look beyond the unambiguous language of the parties' Settlement Agreement to determine whether Defendant's obligation to Plaintiff is actually in the

1. That section provides that:

A discharge under section 727 . . . does not discharge an individual debtor from any debt— to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, but not to the extent that—

. . . . .

such debt includes a liability designated as alimony, maintenance, or support, unless such

liability is actually in the nature of alimony, maintenance, or support. . . .

11 U.S.C. § 523(a)(5)(B).

2. The *Sampson* case refers to prior Tenth Circuit cases, *Yeates v. Yeates (In re Yeates),* 807 F.2d 874 (10th Cir.1986) and *Goin v. Rives (In re Goin),* 808 F.2d 1391 (10th Cir.1987), acknowledges those cases are inconsistent, and to the extent possible, *Sampson* attempts to reconcile them.

nature of alimony, maintenance, or support, it also cites *Yeates* for the proposition that " '[a] written agreement between the parties' is persuasive evidence of intent.' " *Id.* at 722–23 (quoting *Yeates*, 807 F.2d at 878).

▮ In this case, the parties entered into the twenty-eight page Settlement Agreement, which clearly states that the parties had read it, understood its terms, and acknowledged its fairness, and that both parties were represented by counsel in the negotiation, drafting and execution thereof. This Settlement Agreement was incorporated by reference into the Dissolution Judgment entered by the Circuit Court of Marion County, Florida.

The obligation at issue is set forth in the section of the Settlement Agreement entitled "Distribution of Marital Assets," and provides for escalating payments from Defendant to Plaintiff for three years and ten months. This obligation appears in the same section that provides for the division of the parties' interests in certain investment companies, Defendant's Oklahoma medical practice, Defendant's disability income, and certain stock holdings.

There are separately entitled sections dealing with "Disposition of Personal Property," "Separate Property," "Allocation of Debts," "Child Support Payments," and "Spousal Support". The section on Spousal Support expressly provides that Defendant and Plaintiff "waive all rights to alimony for purposes of temporary and/or permanent support, whether permanent, periodic, lump-sum, or rehabilitative," and specifically states that *Plaintiff* "agrees that no alimony for purposes of support ... shall be paid from or to either spouse." Settlement Agreement at 4.

The Dissolution Judgment reiterates in paragraph 3 that "[n]either Husband nor Wife shall receive alimony for purposes of temporary and/or permanent support, whether permanent, periodic, lump-sum, or rehabilitative." Dissolution Judgment at 2. Defendant's obligation to make escalating payments to Plaintiff for three years and ten months appears three pages later in a separate unnumbered paragraph entitled "Equitable Distribution of Marital Assets" along with a reference to distribution of the other Marital Assets. Dissolution Judgment at 5–6.

Based upon the unambiguous language and the construction of both the Dissolution Judgment and the Settlement Agreement, it is the Court's opinion that both Plaintiff and Defendant clearly intended that no support alimony would be paid, and that the obligation at issue would constitute an equitable distribution of the parties' marital assets, or a property settlement. Plaintiff's assertions in her objection that "Defendant ... is a licensed medical doctor with income and earning potential which greatly exceeds [sic] that of [Plaintiff]", that the Settlement Agreement "was designed to encompass alimony for the Plaintiff while giving maximum tax benefits to the Defendant", and that "the intentions of the parties are reflected in the negotiations which took place prior [to] the finalization of the documents" fail to overcome the clear and explicit expression of the parties' shared intent set forth in the Settlement Agreement.[3]

▮ The second prong of the inquiry requires Plaintiff to prove that the obligation at issue was in substance, support. *Id.* at 725. The question thus becomes "what function did the obligation serve at the time of the parties' divorce?" *Id.* (citation omitted). If that obligation effectively served as Plaintiff's source of income when the parties divorced, it is, in substance, support. *Id.* at 726. In making this determination, *Sampson* counsels the Court to consider the relative financial circumstances of the parties and the former spouse's need for support at that time. *Id.* & n. 7.

▮ Here, there is no evidence before the Court that the obligation at issue functioned as Plaintiff's source of income or that she had

---

**3.** If, as Plaintiff alleges, the Settlement Agreement does not reflect the true intent of the parties, but rather was designed to provide the maximum tax benefits to Defendant, it could be construed as an attempt to perpetrate a tax fraud. Rather than question the honesty of the parties, the Court prefers to construe the Settlement Agreement in accordance with the plain meaning of its terms.

need of support at that time. To the contrary, the parties appear to have gone out of their way to make it clear that there was no intent for support alimony to be paid by either party. Based upon the foregoing, the Court cannot find that the obligation at issue functioned as Plaintiff's source of income or that Plaintiff needed support at the time of the parties' divorce.

### B. § 523(a)(15)

 In her objection, dated January 14, 1997, Plaintiff for the first time raises § 523(a)(15) as an alternative ground for relief. As pointed out by Defendant in his reply, the deadline for Plaintiff to seek relief under § 523(a)(15) expired sixty days after the September 10, 1996, first meeting of creditors, or November 12, 1996.[4] Fed. R.Bankr.P. 4007(c). While Plaintiff's causes of action under §§ 523(a)(5) and 523(a)(15) both arise from the parties' divorce, Plaintiff's complaint refers only to § 523(a)(5) and fails to allege sufficient facts which would allow her § 523(a)(15) cause of action to relate back to the complaint. Accordingly, Plaintiff cannot rely upon § 523(a)(15) as a basis for excepting the obligation at issue from Defendant's discharge.

### Decision

Judgment on the pleadings is appropriate when "the pleadings ... and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Bankr.P. 7056 (incorporating Fed. R.Civ.P. 56). Having reviewed the pleadings on file in this proceeding, the Court is of the opinion that there is no genuine issue as to any material fact and that Plaintiff has not carried her burden of proving by a preponderance of the evidence "that the parties intended the obligation as support and that the obligation was, in substance, support." *Sampson*, 997 F.2d at 723. Accordingly, De-

fendant's Motion for Judgment on the Pleadings must be granted.

---

**4.** Sixty days ran on November 9, 1996, which was a Saturday, and the following Monday, November 11, 1996, was a legal holiday. Thus, the deadline became November 12, 1996. Fed. R.Bankr.P. 9006(a).