**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 9, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

In re: ELOISA MARIA TAYLOR,

    Debtor.

_____

MATTHEW E. TAYLOR,

        Cross - Appellant/
        Appellee.

v.

ELOISA MARIA TAYLOR,

        Cross - Appellee/
        Appellant.

Nos. 12-2163 & 12-2164

---

**APPEAL FROM THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW MEXICO AND**
**THE BANKRUPTCY APPELLATE PANEL OF THE TENTH CIRCUIT**
**(Bankr. C. No. 1:10-bk-15832-j7; BAP No. 11-103; Adv. No. 11-BK-01020-J)**

---

Karl F. Kalm, of Kalm Law Firm, P.C., Albuquerque, New Mexico, for Eloisa Maria Taylor, Appellant.

Bonnie B. Gandarilla, (George M. Moore with her on the briefs), of Moore, Berkson, & Gandarilla, P.C., Albuquerque, New Mexico, for Matthew E. Taylor, Appellee.

Before **BRISCOE,** Chief Judge, **SEYMOUR** and **LUCERO**, Circuit Judges.

**BRISCOE**, Chief Judge.

Eloisa Taylor appeals from a decision of the Bankruptcy Appellate Panel of the Tenth Circuit ("BAP") affirming a decision of the United States Bankruptcy Court for the District of New Mexico. The bankruptcy court granted summary judgment in favor of Eloisa's former spouse, Matthew Taylor. The bankruptcy court determined that a $50,660.59 debt Eloisa owed to Matthew for overpayment of spousal support was nondischargeable because Eloisa incurred the debt "in connection with a separation agreement" under 11 U.S.C. § 523(a)(15). Matthew's assertion that the debt was nondischargeable under 11 U.S.C. § 523(a)(5) as a "domestic support obligation" was previously dismissed by the bankruptcy court for failure to state a claim. Matthew has filed a cross appeal from that ruling and from the BAP's ruling that neither it, nor the bankruptcy court, had authority under the parties' divorce settlement agreement to award Matthew attorney fees that he incurred during the bankruptcy proceeding. Exercising jurisdiction under 28 U.S.C. § 158(d), we affirm the bankruptcy court's ruling that the debt is nondischargeable under § 523(a)(15). As regards Matthew's cross appeal, we affirm both the bankruptcy court's ruling that the debt was not excepted from discharge under § 523(a)(5), and the BAP's denial of

Matthew's request for attorney fees.

## I

In 1988, Eloisa and Matthew Taylor were married in Albuquerque, New Mexico. In 2005, they divorced and entered into a Marital Settlement Agreement ("MSA"). A circuit court in Fairfax County, Virginia entered a final decree of divorce on September 22, 2005, which incorporated the MSA. As part of the final decree, the Virginia circuit court ordered Matthew to pay $2,500 per month to Eloisa as spousal support, said payments to begin on August 1, 2005, and to continue until "the death of either party, or the remarriage of [Eloisa], or after" ten years of payments, "whichever event first . . . occurred." Aplt. App. at 43. The final decree also stated that the spousal support obligation was governed by Va. Code § 20-109, and that the Virginia circuit court retained jurisdiction to enter orders to implement the Taylors' agreement.

On April 21, 2009, Matthew moved to terminate spousal support in the Virginia circuit court, arguing that Eloisa had been living with a man for the past two years and that the two were in a marriage-like relationship. Matthew claimed that Eloisa's cohabitation should result in the termination of his spousal support obligation under the divorce decree pursuant to Va. Code § 20-109.[1] On October

---

[1] The pertinent part of that statute states:

Upon order of the court based upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with

(continued...)

3

4, 2010, after conducting a trial on the matter, the Virginia circuit court agreed with Matthew and retroactively terminated his spousal support obligation. Specifically, the Virginia circuit court ordered Eloisa to repay $40,660.59 in overpaid spousal support payments, plus $10,000.00 for Matthew's attorney fees incurred in prosecuting the motion for termination. Accordingly, the Virginia circuit court entered a judgment against Eloisa for $50,660.59.

On November 22, 2010, Eloisa filed for bankruptcy under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Mexico. On January 26, 2011, Matthew filed a complaint objecting to the dischargeability of the $50,660.59 judgment, and initiated an adversary proceeding. Fed. Bankr. R. 7001(6). In his complaint, Matthew alleged that the overpayment debt was not dischargeable and he cited as support three different Bankruptcy Code provisions. First, he argued that the overpayment debt constituted a debt to a former spouse incurred by the debtor "in connection with a separation agreement" under 11 U.S.C. § 523(a)(15). Second, Matthew argued that the overpayment debt constituted a "domestic support obligation" under 11 U.S.C. § 523(a)(5). Finally, he argued that Eloisa knew that she was not entitled

---

[1](...continued)
another person in a relationship analogous to a marriage for one year or more commencing on or after July 1, 1997, the court shall terminate spousal support and maintenance . . . .

Va. Code § 20-109(A).

4

to spousal support under Va. Code § 20-109, and that her acceptance of such support constituted fraud under 11 U.S.C. § 523(a)(2)(A).[2] Eloisa moved to dismiss Matthew's complaint. The bankruptcy court granted in part Eloisa's motion by rejecting Matthew's reliance on § 523(a)(5) and § 523(a)(2)(A). However, the bankruptcy court denied Eloisa's motion to dismiss as regards Matthew's claim that § 523(a)(15) applied to the overpayment debt and was therefore nondischargeable.

Thereafter, both Matthew and Eloisa filed motions for summary judgment regarding the applicability of § 523(a)(15) to the dischargeability issue. Matthew's motion also sought an award of attorney fees incurred during the adversary proceeding pursuant to the parties' MSA. After deciding that the overpayment debt fell within the plain language of § 523(a)(15), the bankruptcy court noted that the legislative history likewise supported a conclusion that the overpayment debt was nondischargeable. Accordingly, the bankruptcy court granted Matthew's motion for summary judgment and denied Eloisa's motion for summary judgment. The bankruptcy court did not address Matthew's claim that he was entitled to attorney fees incurred while pursuing the bankruptcy adversary complaint.

Both parties appealed to the BAP. The BAP affirmed the bankruptcy

---

[2]  11 U.S.C. § 523(a)(2)(A) states that debts obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition" are nondischargeable.

5

court's ruling that the overpayment debt was not a "domestic support obligation" under § 523(a)(5), as well as the bankruptcy court's ruling that the overpayment debt did qualify for an exception from discharge under § 523(a)(15). Finally, the BAP ruled that neither it nor the bankruptcy court had authority to award attorney fees under the MSA's fee-shifting agreement. Eloisa appeals the bankruptcy court's summary judgment ruling that the overpayment debt is nondischargeable under § 523(a)(15); Matthew cross-appeals the bankruptcy court's dismissal of his § 523(a)(5) claim and the BAP's ruling on attorney fees.

## II

"Although this appeal is from a decision by the BAP, we review only the Bankruptcy Court's decision." Miller v. Deutsche Bank Nat'l Trust Co. (In re Miller), 666 F.3d 1255, 1260 (10th Cir. 2012) (quotation omitted). "We review matters of law de novo, and we review factual findings made by the bankruptcy court for clear error." Id. (quotation omitted). In so doing, we "treat[] the BAP as a subordinate appellate tribunal whose rulings may be persuasive." Cohen v. Borgman (In re Borgman), 698 F.3d 1255, 1259 (10th Cir. 2012).

Ordinarily, "[w]hether an obligation to a former spouse is actually in the nature of support is a factual question subject to a clearly erroneous standard of review." Sampson v. Sampson (In re Sampson), 997 F.2d 717, 721 (10th Cir. 1993). Because the parties argue that the bankruptcy court erred in its interpretation of the Bankruptcy Code, however, we review those legal rulings de

6

novo.  See Search Mkt. Direct, Inc. v. Jubber (In re Paige), 685 F.3d 1160, 1178

(10th Cir. 2012) ("When a lower court's factual findings are premised on

improper legal standards or on proper ones improperly applied, they are not

entitled to the protection of the clearly erroneous standard, but are subject to de

novo review." (alteration and quotation omitted)).

### III

One of the principal purposes of the Bankruptcy Code is to grant insolvent

debtors a "fresh start."  Grogan v. Garner, 498 U.S. 279, 286-87 (1991).

However, by providing limited exceptions to discharge, the Bankruptcy Code

recognizes that certain interests outweigh the "fresh start" for the debtor.  Id.

Two provisions of the Bankruptcy Code except from discharge debts arising out

of obligations to the family:  § 523(a)(5) excepts from discharge any "domestic

support obligation," as defined in the Bankruptcy Code; and § 523(a)(15) excepts

from discharge obligations arising in connection with a divorce proceeding or

settlement agreement.  11 U.S.C. § 523(a)(5), (15).  "These provisions reflect the

congressional preference for the rights of spouses to alimony, maintenance or

support over the rights of debtors to a 'fresh start' free of debts."  See Gianakas v.

Gianakas  (In re Gianakas), 917 F.2d 759, 761 (3d Cir. 1990); see also Miller v.

Gentry (In re Miller), 55 F.3d 1487, 1489 (10th Cir. 1995) ("The policy

underlying § 523(a)(5), however, favors enforcement of familial support

obligations over a 'fresh start' for the debtor.").  Because § 523(a)(15) will apply

7

to a debt only if that debt does not qualify as a "domestic support obligation"

under § 523(a)(5), we first address whether the overpayment debt at issue

qualifies as a "domestic support obligation."[3]

*A.  Section 523(a)(5)*

### i)  § 523(a)(5) Background

Before Congress amended the Bankruptcy Code in 2005, § 523(a)(5) stated

that a bankruptcy court may deny a debtor discharge for a debt owed

> to a spouse, former spouse, or child of the debtor, for alimony
> to, maintenance for, or support of such spouse or child, in connection
> with a separation agreement, divorce decree or other order of a court
> of record, determination made in accordance with State or territorial
> law by a governmental unit, or property settlement agreement, but
> not the extent that—
>> (A) such debt is assigned to another entity,
>> voluntarily, by operation of law, or otherwise (other than
>> debts assigned pursuant to section 408(a)(3) of the
>> Social Security Act, or any such debt which has been
>> assigned to the Federal Government or to a State or any
>> political subdivision of such State); or
>> (B) such debt includes a liability designated as
>> alimony, maintenance, or support, *unless such liability is*

---

[3] Notably, some courts have determined that a debt that would be excepted from discharge under § 523(a)(15) essentially moots the necessity of determining whether the debt is a "domestic support obligation" under § 523(a)(5). See, e.g., Berse v. Langman (In re Langman), 465 B.R. 395, 405 (Bankr. D. N.J. 2012) ("As a practical consequence, it is now no longer necessary for bankruptcy courts to determine the exact extent to which a state court matrimonial judgment constitutes a 'domestic support obligation' if the plaintiff can demonstrate that the judgment would be nondischargeable in any event under § 523(a)(15)."). While we agree with the practical consequences of this conclusion (i.e., the debt will be nondischargeable either way), we nevertheless address whether the overpayment debt qualifies as a "domestic support obligation" because § 523(a)(15)'s plain language requires that the debt not be a "domestic support obligation."

> *actually in the nature of alimony, maintenance, or support.*

11 U.S.C. § 523(a)(5) (2000) (emphasis added).

Effective October 17, 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") amended § 523(a)(5) to delete the subsection's previous verbiage and to simply state that a bankruptcy court may deny a debtor discharge "for a domestic support obligation." Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23. The BAPCPA defined "domestic support obligation" as a debt

> (A) *owed to* or recoverable by--
>     (i) *a spouse*, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; *or*
>     (ii) *a governmental unit*;
> (B) *in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse*, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--
>     (i) a separation agreement, divorce decree, or property settlement agreement;
>     (ii) an order of a court of record; or
>     (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A) (emphases added).  This new definition "give[s] section

523(a)(5) a broader scope than the former terms" in the following ways:  the

definition now explicitly includes support obligations that accrue post-petition;

the order, agreement, or determination creating the obligation can now be either

pre- or post-petition; and, as pertinent here, the definition now expressly includes

"assistance provided by a governmental unit."  See William Houston Brown,

Bankruptcy and Domestic Relations Manual, § 6.1 (2012).  This definition affects

provisions throughout the Bankruptcy Code, including discharge of debt, the

automatic stay, priorities, and exemptions.  See, e.g., 11 U.S.C. § 507(a)(1)

(giving domestic support obligations first priority up from seventh priority under

the pre-BAPCPA Bankruptcy Code).

When determining whether an obligation is in the nature of alimony,

maintenance, or support, this court conducts a "dual inquiry" looking first to the

intent of the parties at the time they entered into their agreement, and then to the

substance of the obligation.  See Sampson, 997 F.2d at 723; Sylvester v.

Sylvester, 865 F.2d 1164, 1165 (10th Cir. 1989).[4]  The nature of the obligation is

---

[4]  While these cases were decided before the 2005 BAPCPA amendments,
courts continue to apply pre-BAPCPA case law to determine whether an
obligation is in the nature of support.  See DeHart v. Miller (In re Miller), 424
B.R. 171, 175 n.6 (Bankr. M.D. Penn. 2010).  Here, the bankruptcy court
concluded that

> [a]lthough the Bankruptcy Abuse Prevention and Consumer
> Protection Act of 2005 ("BAPCPA") changed the language in 11

(continued...)

10

not restricted to the parties' label in the settlement agreement and is a question of federal law. Sylvester, 865 F.2d at 1166; see Young v. Young (In re Young), 35 F.3d 499, 500 (10th Cir. 1994) (finding that shared intent "is not limited to the words of the settlement agreement, even if unambiguous" and stating that "the bankruptcy court is required to look behind the words and labels of the agreement in resolving this issue."). That said, state law may inform the nature of the interest. As "[t]he party seeking to hold the debt nondischargeable," Matthew bore the burden of establishing by a preponderance of the evidence that the parties intended the debt to be in the nature of support and that the obligation was

---

[4](...continued)
U.S.C. § 523(a)(5) to apply to "domestic support obligations" as defined in 11 U.S.C. § 101(14A), this change "did not change the standard for whether an obligation is in the nature of support." Consequently, it is appropriate to continue to apply the same test for determining whether a debt is in the nature of support that was applicable under 11 U.S.C. § 523(a)(5) prior to the enactment of BAPCPA.

Aplt. App. at 84-85 (citation omitted). Neither party takes issue with the bankruptcy court's application of pre-BAPCPA case law. We agree that the pre-BAPCPA case law continues to have relevance post-BAPCPA because both versions of the statute require a determination that the debt be in the nature of support. See Wis. Dep't of Workforce Dev. v. Ratliff, 390 B.R. 607, 612 (E.D. Wis. 2008) ("'[D]omestic support obligation' is a term derived from the definition of a nondischargeable debt for alimony, maintenance, and support contained in the former Section 523(a)(5); therefore, case law construing the former Section 523(a)(5) is relevant and persuasive." (quotation omitted)). Pre-BAPCPA § 523(a)(5) explicitly required the debt to be "actually in the nature of alimony, maintenance, or support." Post-BAPCPA § 101(14A) requires the debt to be "in the nature of alimony, maintenance, or support," without consideration of the parties' label.

11

in substance support.  Sampson, 997 F.2d at 723.

### ii) Bankruptcy Court's and BAP's rulings

The bankruptcy court determined that Matthew's complaint failed to allege any facts that supported a conclusion that the debt was actually in the nature of support *as to him*, and the BAP agreed.  The bankruptcy court concluded that § 523(a)(5) required that it analyze whether the obligation was "in substance[] in the nature of support for the creditor-spouse entitled to reimbursement, taking into account the relative financial circumstances of the parties at the time of the divorce."  Aplt. App. at 86, 88 (finding that Matthew could not "solely rely on the original character of the debt owed *by* him to his former spouse to state a claim that a debt owed *to* him by his former spouse for overpayment of spousal support is non-dischargeable").

The BAP agreed that the debt was not in the nature of support.  The BAP, however, concluded that the debt arose at the time the state court entered the overpayment judgment.[5]  Aplt. App. at 114 (rejecting Matthew's assertion that he alleged sufficient facts because such facts only supported a conclusion that Eloisa no longer needed support, not that the debt was in the nature of support for

_____

[5]  This difference between the bankruptcy court's and BAP's analysis of the actual nature of the debt does not affect the outcome here.  Because Matthew failed to allege *any* facts to establish that the debt arose from support owed to him, *when* the court should evaluate the nature of the debt is immaterial (i.e., at the time of the divorce, as the bankruptcy court concluded; or at the time the debt in question arose, when the state court retroactively terminated spousal support and entered judgment against Eloisa, as the BAP ruled).

Matthew).  Accordingly, the BAP affirmed the bankruptcy court's dismissal of Matthew's § 523(a)(5) claim.

### iii) Matthew's argument on cross appeal

The crux of Matthew's argument in his cross appeal of the bankruptcy court's dismissal of his § 523(a)(5) claim is that the BAPCPA's inclusion of "governmental units" in the definition of "domestic support obligation" in § 101(14A) precludes an analysis of "the nature of the debt at the time it arose." Aplee. Br. at 5.  Specifically, he argues that this newly defined term precludes a bankruptcy court from evaluating the nature of the debt "with respect to the party claiming that the debt is non-dischargeable." Id. at 6.  Otherwise, Matthew argues, the bankruptcy court would be ignoring the inclusion of governmental units in the definition of "domestic support obligation."  He urges that because a debt owed *to* a governmental unit will never be in the nature of support, § 101(14A)'s inclusion of governmental units signals that the original nature of the debt remains constant for purposes of the Bankruptcy Code regardless of whether the creditor is a spouse or governmental unit.  Section 523(a)(5) provides little guidance on this issue because that exception applies to all "domestic support obligation[s]."  Accordingly, we look first to the plain language of § 101(14A), which defines "domestic support obligation."

### iv)  Plain language of § 101(14A)

"Our primary task in construing statutes is to determine congressional

13

intent, using traditional tools of statutory interpretation." See N.M. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv., 248 F.3d 1277, 1281 (10th Cir. 2001). Supreme Court "precedents make clear that the starting point for [the] analysis is the statutory text. And where, as here, the words of the statute are unambiguous, the judicial inquiry is complete." Desert Palace, Inc. v. Costa, 539 U.S. 90, 98 (2003) (citation and quotation omitted); see also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.").

Section 101(14A)(A) defines a debt as a "domestic support obligation" when four requirements are satisfied. First, the debt must be owed to either "a spouse, former spouse, or child of the debtor,"[6] which is listed under subpart (i), or "a governmental unit," which is listed under subpart (ii). Id. § 101(14A)(A)(i), (ii). Second, § 101(14A)(B) next requires that the "nature" of the debt be "alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor . . . without regard to whether such debt is expressly so designated." Id. § 101(14A)(B). Third, the debt must arise from a separation agreement, divorce decree, or property settlement agreement. Id. § 101(14A)(C). Finally, the debt

_____

[6] For simplicity's sake, the parties listed in § 101(14A)(A)(i) will be referred to as "spouse."

must not have been assigned to a nongovernmental entity, unless for collection purposes. Id. § 101(14A)(D). The only requirement at issue in this appeal is whether the debt meets the second requirement that it be in the nature of support.

Under the plain language of the statute, the debt must be "in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) *of such spouse*." Because "such" is not defined in the Bankruptcy Code, we turn to the ordinary meaning of the term. See Hamilton v. Lanning, 130 S. Ct. 2464, 2471 (2010). "Such" means "previously characterized or specified: aforementioned." Webster's Third New International Dictionary 2283 (1993). When read in context, "*such* spouse" in § 101(14A)(B) refers to "*a* spouse" in § 101(14A)(A)(i). Accordingly, when read together, the modifier "such" limits the determination of the nature of the debt with respect to the *creditor*-spouse referenced in § 101(14A)(A)(i). See Ransom v. FIA Card Servs., N.A., 131 S. Ct. 716, 724 (2011) (interpreting the Bankruptcy Code and noting that "[w]e must give effect to every word of a statute wherever possible" (quotation omitted)). Therefore, pursuant to the plain language defining "domestic support obligation," the debt must be in the nature of support to the creditor-spouse – or in this case, the debt must be in the nature of support for Matthew.

Matthew argues that the plain language of the statute requires some analysis, but not that the statutory language is ambiguous. Aplee. Br. at 15

15

(stating that his analysis is the "only approach that makes sense of Congress'[s] addition of 'a governmental unit' to the class of entities who may be owed debts in the nature of support").  We agree with Matthew's contention that the nature of the debt owed to a governmental unit will not be "in the nature of support" to that governmental unit—in such circumstances the statutory language supports a conclusion that the debt retains its original supportive nature.  But the same conclusion does not arise regarding debts owed to spouses pursuant to the plain language of § 523(a)(5).[7]  Accordingly, Matthew's proffered interpretation of § 101(14A) goes against the plain language of the Bankruptcy Code.  See In re Miller, 55 F.3d at 1489 ("[W]ith regard to the Bankruptcy Code, . . . where the statutory language is clear, [the courts'] sole function . . . is to enforce it according to its terms.").  Because Matthew alleged no facts to support his contention that the nature of the overpayment debt was actually for his support, the bankruptcy court did not err by dismissing his § 523(a)(5) claim.  Because the overpayment debt here does not qualify as "domestic support obligation," we must now determine whether that debt is nevertheless excepted from discharge under § 523(a)(15).

---

[7] Furthermore, we note that the Ratliff court gave effect to §§ 101(14A)(A) and (B) when it held that an obligation to repay the state for food stamp overpayments was a "domestic support obligation."  390 B.R. at 617.  Under the court's reading, the debt was owed to a governmental unit (satisfying subpart (A)), and the debt was in the nature of support of a "child of the debtor" (satisfying subpart (B)).  Id. at 616-17.

16

*B. Section 523(a)(15)*

In 1994, Congress amended the bankruptcy law by adding § 523(a)(15),

which permitted a bankruptcy court to deny a debtor discharge for debts

> not of the kind described in paragraph (5) that [are] incurred by the
> debtor in the course of a divorce or separation or in connection with
> a separation agreement, divorce decree or other order of a court of
> record, a determination made in accordance with State or territorial
> law by a governmental unit unless—
>> (A) the debtor does not have the ability to pay such debt
>> from income or property of the debtor not reasonably
>> necessary to be expended for the maintenance or support
>> of the debtor or a dependent of the debtor and, if the
>> debtor is engaged in a business, for the payment of
>> expenditures necessary for the continuation,
>> preservation, and operation of such business; or
>> (B) discharging such debt would result in a benefit to
>> the debtor that outweighs the detrimental consequences
>> to a spouse, former spouse, or child of the debtor[.]

Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 304(e).

In 2005, Congress again amended this section by removing the two

"defenses" to § 523(a)(15) dischargeability (subparts (A) and (B)), so that a

bankruptcy court may deny a debtor a discharge for

> [debts] to a spouse, former spouse, or child of the debtor and not of
> the kind described in paragraph (5) that [are] incurred by the debtor
> in the course of a divorce or separation or in connection with a
> separation agreement, divorce decree or other order of a court of
> record, or a determination made in accordance with State or
> territorial law by a governmental unit.

11 U.S.C. § 523(a)(15).

For reasons previously discussed, the overpayment debt here does not

qualify as a "domestic support obligation" under § 523(a)(5). Additionally, the parties do not dispute that the overpayment debt is a debt owed to a former spouse, Matthew. Accordingly, the only disputed portion of § 523(a)(15)'s application to the overpayment judgment is whether that debt was "incurred by the debtor in the course of a divorce . . . or in connection with a separation agreement, divorce decree or other order of a court of record." Id. Eloisa does not dispute that the overpayment debt satisfies the plain language of the statute that the debt was incurred in the course of or in connection with a divorce; rather, she makes a broad argument that such a "literal application" of this provision is contrary to the intentions of the Bankruptcy Code drafters.

i) **Plain Statutory Language**

"[I]f an act is unambiguous, that ends the matter and resort should not be had to the statutory history." Wyodak Res. Dev. Corp. v. United States, 637 F.3d 1127, 1135 (10th Cir. 2011). Pursuant to § 523(a)(15)'s plain and unambiguous language, the overpayment debt qualifies as a nondischargeable debt: the debt arose as a result of a judgment against a spouse, Eloisa, in favor of her former spouse, Matthew, by the Virginia circuit court "in connection with a separation agreement [or] divorce decree." 11 U.S.C. § 523(a)(15). The state court entered the overpayment judgment after retaining jurisdiction to modify the amount of Matthew's spousal support obligation to Eloisa. Accordingly, under the plain language of the statute, the overpayment judgment is a nondischargeable debt.

18

Because "[t]he language before us expresses Congress'[s] intent . . . with sufficient precision[,] . . . reference to legislative history and to pre-Code practice is hardly necessary." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989).

Eloisa recognizes that the overpayment debt falls within the plain language of the statute, so she instead asserts that application of the unambiguous language here would be contrary to Congress's purpose in enacting § 523(a)(15). Eloisa argues that § 523(a)(15) was enacted to protect the dependent spouse and that the "'plain language' [of the statute] should be applied in [that] context." Aplt. Br. at 5. She contends that if the debt is not dischargeable, she will be "left in the lurch" because her wages will be garnished for decades in order to satisfy the overpayment judgment. Id. This outcome, she argues, is "manifestly at odds with Congress'[s] intent in enacting §523(a)(15), with the Bankruptcy Code as a whole, and with Congress'[s] intent in elevating certain marital debts above the debtor's fresh start." Id.

### ii) Absurdity Doctrine

In her brief, Eloisa cites two Supreme Court cases as support for her argument that the plain language of the statute should "yield to the legislative intent of the Bankruptcy Code drafters." Id. at 8 (citing Ron Pair Enters., Inc., 489 U.S. at 242-43; Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571

19

(1982)).  Both cited cases deal with the absurdity doctrine.[8]  The absurdity doctrine applies to unambiguous statutes "as a means to avoid applying the unequivocal language of a statute.  But the doctrine has been strictly limited." Robbins v. Chronister, 435 F.3d 1238, 1241 (10th Cir. 2006) (en banc).  The absurdity doctrine applies "in only the most extreme of circumstances," when an interpretation of a statute "leads to results so gross as to shock the general moral or common sense," which is a "formidable hurdle" to the application of this doctrine.  United States v. Husted, 545 F.3d 1240, 1245 (10th Cir. 2008); Robbins, 435 F.3d at 1241 (quotation omitted).  It is not enough to show that Congress intended a different result from the one produced by the plain language of the statute.  Robbins, 435 F.3d at 1241.

The problem with Eloisa's argument on this point is that application of § 523(a)(15)'s exception to the overpayment debt here does not produce a result at odds with the intentions of its drafters.  Even if this court were to rely on the legislative history of § 523(a)(15) as originally enacted, as Eloisa argues, there is no indication that congressional concern extended to the protection of a debtor-

---

[8]  The drafters' intentions rather than the plain language controls when "'literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'"  Ron Pair Enters., Inc., 489 U.S. at 242 (quoting Griffin, 458 U.S. at 571) (noting that only in the "'rare case'" will this doctrine apply).  In Griffin, the Supreme Court stated that it had "reserved some scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning . . . would thwart the obvious purpose of the statute." 458 U.S. at 571 (quotations omitted).

20

dependent spouse who may be responsible for repayment of wrongfully paid spousal support. As Eloisa points out, when Congress originally enacted § 523(a)(15), it was concerned with the dependent spouse who, as part of the divorce agreement, negotiated a lower support payment in exchange for the nondependent spouse shouldering more of the marital debt. See, e.g., H.R. Rep. No. 103-835, reprinted in 1994 U.S.S.C.A.N. 3340, at 3342, 3363-64 (noting that amendments "ensure[d] that the bankruptcy process cannot be utilized to avoid alimony and child support obligations" and that amendment intended to provide greater protection for marital and child support obligations because "a debtor should not use the protection of a bankruptcy filing in order to avoid legitimate marital and child support obligations"); see also 103 Cong. Rec. H10,752-01, § 304 (1994) (recognizing that § 523(a)(15) would prevent "hold harmless" agreements that function as support from being discharged in bankruptcy, with the result that the "nondebtor spouse may be saddled with substantial debt and little or no alimony or support").

Despite Eloisa's assertion to the contrary, Congress's concern for the dependent spouse as the creditor when "hold harmless" agreements are in play does not equate to concern for the dependent spouse as the debtor when repayment is sought of wrongfully paid spousal support. Eloisa argues that Congress's protective purpose extends to the dependent spouse regardless of the nature of the debt, or to whom the debt is owed. But she cites no support for her

21

contention that applying § 523(a)(15) here is contrary to the intent of the BAPCPA drafters.

In fact, the BAPCPA's deletion of the two defenses (former § 523(a)(15)(A) and (B)) and its failure to exclude from those exceptions debts owed to the nondependent spouse, counsel against a conclusion that Congress placed importance only on marital debts owed to a dependent spouse. See, e.g., H.R. Rep. No. 109-31(1), at 61 (2005) ("Section 215(3) amends section 523(a)(15) to provide that obligations to a spouse, former spouse, or a child of the debtor . . . incurred in connection with a divorce or separation or related action are nondischargeable irrespective of the debtor's inability to pay such debts.").

Even if Congress only intended to protect marital debts owed to a dependent spouse, "the reality [is] that the reach of a statute often exceeds the precise evil to be eliminated." Brogan v. United States, 522 U.S. 398, 403 (1998). And "[w]hatever Congress's motivation, we can apply the [absurdity] doctrine only when it would have been unthinkable for Congress to have intended the result commanded by the words of the statute." United States v. Brown, 529 F.3d 1260, 1266 (10th Cir. 2008) (quotation omitted). "[W]e cannot reject an application of the plain meaning of the words in a statute on the ground that we are confident that Congress would have wanted a different result." Robbins, 435 F.3d at 1241. It is not unthinkable that Congress would place importance on all marital obligations, regardless of whether the debt was owed to or by the

22

dependent spouse – even above the need for the debtor's fresh start. Accordingly, Eloisa's citations to <u>Ron Pair Enterprises, Inc.</u> and <u>Griffin</u> as support for disregarding the plain language of the statute are not persuasive.[9]

## C. Attorney Fees

Matthew also appeals the BAP's ruling that neither it, nor the bankruptcy court, had authority under the Taylors' MSA to award Matthew attorney fees incurred pursuing the adversary proceeding. Upon review of the attorney fee provisions set forth in the MSA, the BAP's ruling on this issue is clearly correct.

## IV

Accordingly, we AFFIRM the bankruptcy court's ruling that the debt arising from the overpayment of spousal support is nondischargeable under 11 U.S.C. § 523(a)(15). We also AFFIRM the bankruptcy court's dismissal of Matthew's claim that this same debt is also nondischargeable as a "domestic support obligation" under 11 U.S.C. § 523(a)(5). Further, we AFFIRM the BAP's ruling that Matthew is not entitled to attorney fees because neither the BAP nor the bankruptcy court had authority to award attorney fees under the MSA's fee-shifting agreement.

---

[9] Eloisa makes a one-sentence argument that the bankruptcy court should have used its "broad authority" to find that the overpayment debt was dischargeable. Aplt. Br. at 8. We conclude that Eloisa's perfunctory brief on this point is not sufficient. <u>See, e.g.</u>, <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived.").