**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

In re: STEPHEN D.
CHAMBERLAIN,

    Debtor.

_____

STEPHEN D. CHAMBERLAIN,

    Appellant,

v.

JUDITH C. CHAMBERLAIN;
DOUGLAS B. KIEL, as Chapter 13
Trustee,

    Appellees.

No. 17-1121
(D.C. No. 1:16-CV-01123-PAB)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

---

[*]     The parties do not request oral argument, and it would not materially help us to decide this appeal. As a result, we decide the appeal based on the briefs. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

    This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value under Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

Mr. Stephen Chamberlain agreed to pay his children's college expenses as part of a divorce proceeding. When he failed to comply with this obligation, the bankruptcy court allowed a priority claim by his ex-wife, Ms. Judith Chamberlain, to enforce this obligation on behalf of their children. Stephen[1] challenges this order, and we affirm.

I.    **Background**

Stephen and Judith Chamberlain were divorced in 2009 after a 21-year marriage. During their marriage, Stephen worked for Southwest Airlines and his wife stayed home to care for their three children, Sarah, Kate, and John.

The divorce decree incorporated a marital settlement agreement signed by Stephen and Judith. This agreement included a "College Education" provision, which stated that following exhaustion of their college savings accounts, "Husband shall pay the costs of tuition, room and board, books, registration fees, and reasonable application fees incident to providing each Child with an undergraduate college education for four consecutive years of college." R. Vol. II, at 70.

Stephen did not meet his obligations under the college education provision, which led Judith to file a motion in Maryland state court to enforce the marital settlement agreement. This motion was resolved in

---

[1]    Because the parties have the same last name, we will refer to them as Stephen and Judith.

2011 through a consent order. In the order, Stephen reaffirmed his obligation to pay his children's college expenses under the marital settlement agreement, including repayment of student loans to the two oldest children.

Stephen later failed to pay John's college expenses, and Judith filed another action in state court to enforce the marital settlement agreement and the 2011 consent order. This action was resolved by a second consent order. There Stephen agreed to contribute up to $14,000 per academic year toward John's college expenses. After Stephen again failed to comply, the state court found him in contempt and awarded judgment to Judith for $14,000 (Stephen's share of the first year of John's college tuition) and the attorney fees incurred by Judith to enforce the marital settlement agreement. When Judith initiated collection efforts, Stephen filed bankruptcy.

Judith filed a proof of claim, which included

- the amounts still owed on Sarah and Kate's undergraduate student loans and

- the amount that Stephen had agreed to pay toward John's college expenses.

According to Judith, these amounts constituted "domestic support obligations" under 11 U.S.C. § 101(14A), creating priority claims that must be fully repaid. *See* 11 U.S.C. § 1322(a) (requiring full payment of priority claims). Stephen objected, arguing that

3

- his obligation to pay the children's college expenses did not constitute a domestic support obligation and

- Judith's claim was invalid because she was not a proper party and had not proven the amounts claimed.

After an evidentiary hearing, the bankruptcy court

- sustained Stephen's objection to $8,632.85 of the amount claimed by Judith and

- found that $108,085.08 of the debt constituted a domestic support obligation and created a priority claim.

Stephen appealed in district court, which affirmed. He now appeals to our court.[2]

## II. Standard of Review

In an appeal from a final decision of a bankruptcy court, "we independently review the bankruptcy court's decision, applying the same standard as the . . . district court." *Aviva Life & Annuity Co. v. White (In re Millennium Multiple Emp'r Welfare Benefit Plan)*, 772 F.3d 634, 638 (10th Cir. 2014) (internal quotation marks and brackets omitted). In applying this standard, we conduct de novo review of the bankruptcy court's legal conclusions and clear-error review of the court's factual findings. *Id.* at 639. In conducting this review, we do not defer to the district court's analysis, though it informs our review. *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1310 (10th Cir. 2008).

---

[2] Because Stephen is appearing pro se, we construe his filings liberally but do not act as his advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

4

## III. Domestic Support Obligation

The primary question is whether Stephen's obligation to pay his children's college expenses qualifies as a "domestic support obligation." The bankruptcy court answered "yes," and we uphold this determination.

*The requirements of a domestic support obligation.* A debt constitutes a "domestic support obligation" if it meets four requirements:

1. It is "owed to or recoverable by . . . a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative" or a governmental unit.

2. It is "in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated."

3. It arises from "a separation agreement, divorce decree, or property settlement agreement," "an order of a court of record," or a lawful determination by a governmental unit.

4. It has not been assigned to a nongovernmental entity unless for collection purposes.

11 U.S.C. § 101(14A); *see Taylor v. Taylor (In re Taylor)*, 737 F.3d 670, 678 (10th Cir. 2013). As the party challenging discharge, Judith bore the burden of proving that the debt entailed a domestic support obligation. *See Taylor*, 737 F.3d at 677.

*The arguments in bankruptcy court and the court's finding.* In bankruptcy court, Stephen argued that his obligation to pay his children's college expenses did not constitute a domestic support obligation because it was not "in the nature of alimony, maintenance, or support" (the second

5

requirement). 11 U.S.C. § 101(14A)(B). This argument involves a factual question subject to the clear-error standard of review. *Taylor*, 737 F.3d at 674. Under this standard, we must affirm the bankruptcy court's factual finding unless it lacks "factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made."[3] *Gillman v. Ford (In re Ford)*, 492 F.3d 1148, 1153 (10th Cir. 2007) (internal quotation marks omitted).

The bankruptcy court disagreed with Stephen, finding that his obligation comprised domestic support. We conclude that the bankruptcy court did not commit clear error. The court properly conducted a dual inquiry to determine whether these obligations involved support, "looking first to the intent of the parties at the time they entered into their agreement, and then to the substance of the obligation." *Taylor*, 737 F.3d at 676.

*Intent of the parties when entering into the agreement.* With respect to the initial issue of intent, the court appropriately considered

- the language and structure of the college expense obligation in the marital settlement agreement and

---

[3] In bankruptcy court, Stephen also argued that Congress had intended the term "support" to cover only what was necessary to provide for the family's daily living expenses. The bankruptcy court rejected this argument, and Stephen has not challenged this aspect of the court's ruling.

- the parties' testimony regarding surrounding circumstances, including the disparity in Stephen and Judith's financial circumstances at the time of the divorce.

*See Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 723, 725 (10th Cir. 1993).[4]

The bankruptcy court found that the parties had intended Stephen's college expense obligation to constitute support because

- this obligation was located in the part of the marital settlement agreement that addressed child support, alimony, and related matters,

- the evidence established that Stephen and Judith had viewed a college education as an important part of their children's upbringing,

- the couple had long intended to provide for the children's education, and

- this intent could not be carried out at the time of the divorce, given the couple's relative financial capabilities, without Stephen assuming this obligation.

These considerations support the bankruptcy court's finding that the parties had intended Stephen's college expense obligation to constitute support. *See, e.g.*, *Boyle v. Donovan*, 724 F.2d 681, 683 (8th Cir. 1984) (affirming the bankruptcy court finding that the debtor's obligation to fund

---

[4] Congress amended the definition of "domestic support obligation" in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23. But both before and after this amendment, the definitions of "domestic support obligations" required that the debt be "in the nature of support." As a result, we consider case law preceding the amendment when determining whether an obligation involves support. *See Taylor*, 737 F.3d at 676 n.4.

7

college and post-graduate education involved support based on the parties' relative financial capabilities, the parties' view that "[c]ollege and post graduate education were part of the family pattern of life," and the debtor's initiative to assume this obligation); *Gianakas v. Gianakas (In re Gianakas)*, 917 F.2d 759, 763-64 (3d Cir. 1990) (concluding that the bankruptcy court had reasonably found an intent for the ex-husband's mortgage debt to constitute support based on evidence that the couple had wanted to maintain the marital home for the former wife and children and only the ex-husband had the financial ability to do so).

Stephen disputes the bankruptcy court's conclusions, relying on his testimony and consent to a modification of the marital settlement agreement. This reliance is misguided.[5]

The bankruptcy court considered Stephen's testimony but "[did not] give [it] much credence" in light of the other evidence of the parties' intent at the time of the divorce. R. Vol. II, at 269. This assessment of credibility fell within the bankruptcy court's purview because the intent determination "does not turn on one party's post hoc explanation as to his

---

[5]     Stephen is also mistaken in claiming that few courts have previously found college expense obligations to be in the nature of support. *See, e.g.*, *Boyle*, 724 F.2d at 683 (affirming the bankruptcy court's finding that the debtor's obligation to fund children's college and post-graduate education was in the nature of support); *Harrell v. Sharp (In re Harrell)*, 754 F.2d 902, 904-05 (11th Cir. 1985) (concluding that the debtor's obligation to pay his son's post-majority educational expenses was in the nature of support); *In re Crosby*, 229 B.R. 679, 681-82 (Bankr. E.D. Va. 1998) (same).

8

or her state of mind at the time of the agreement, even if uncontradicted." *Sampson*, 997 F.2d at 723.

Stephen also argues that his obligation originated in the 2011 and 2014 consent orders rather than the marital settlement agreement. For this argument, Stephen points out that he consented to a modification of terms between entry into the marital settlement agreement and the consent orders. For example, in the consent orders, he agreed to pay Sarah and Kate's college loans and then cap his obligation to pay John's college expenses at $14,000 per year. As a result, Stephen argues, the bankruptcy court should have assessed his intent at the time of the consent orders rather than at the time of divorce.

We are not persuaded. Stephen's obligation had already been established by the college expense provision in the marital settlement agreement, which was then included in the two consent orders. The bankruptcy court therefore properly considered the parties' intent as of their entry into the marital settlement agreement.

*The substance of the obligation*. In determining whether Stephen's obligation involved support, the bankruptcy court also considered the substance of Stephen's obligation. "The critical question in determining whether the obligation is, in substance, support is the function served by the obligation at the time of the divorce." *Sampson*, 997 F.2d at 725 (internal quotation marks omitted). In turn, the function of the obligation

is affected by the parties' relative financial circumstances at the time of the divorce. *See id.* at 726 & n.7.

Here, the bankruptcy court reasonably determined that Stephen was the only parent financially able to pay for the children's college education. Thus, the court was justified in regarding Stephen's obligation, in substance, as support.[6]

* * *

For the foregoing reasons, we affirm the bankruptcy court's conclusion that Stephen's college expense obligation was "in the nature of support" as required for a domestic support obligation under the Bankruptcy Code.

## IV.    New Arguments on Appeal

In bankruptcy court, Stephen did not dispute satisfaction of the three other statutory requirements for a domestic support obligation. R. Vol. II, at 286 (bankruptcy court notes the lack of a dispute regarding three of the four requirements); *see Taylor*, 737 F.3d at 678 (summarizing the four statutory requirements). In district court and our court, however, Stephen

---

[6]    Stephen disputes this conclusion, arguing that Maryland law does not include post-secondary educational expenses in the definition of "child support." This argument is immaterial because characterization of a debt as a domestic support obligation involves a matter of federal law. *See Sampson*, 997 F.2d at 721, 722; *Gianakas*, 917 F.2d at 762. As a result, a debt may be "in the nature of support . . . even though it would not legally qualify as alimony or support under state law." *Yeates v. Yeates (In re Yeates)*, 807 F.2d 874, 878 (10th Cir. 1986); *accord Sampson*, 997 F.2d at 722; *Richardson v. Edwards*, 127 F.3d 97, 100-01 (D.C. Cir. 1997).

10

challenges two of the other requirements, arguing that (1) Congress intended the term "child" as used in 11 U.S.C. § 101(14A)(A) to refer only to minor children, not children older than 18 (like his children during their college years) and (2) this obligation was established by the consent orders rather than "a separation agreement, divorce decree, or property settlement agreement." 11 U.S.C. § 101(14A)(C).

Because Stephen did not raise these arguments in bankruptcy court, they are forfeited. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). For arguments that are forfeited, we ordinarily consider reversal only upon a showing of plain error.[7] *See id.*; *Fed. Deposit Ins. Corp. v. Kan. Bankers Sur. Co.*, 840 F.3d 1167, 1171-72 (10th Cir. 2016). But Stephen has not argued plain error. As a result, we decline to consider the possibility of plain error on Stephen's two new arguments. *Richison*, 634 F.3d at 1131.

## V.  Judith's Right to Assert a Claim

Stephen concedes that Judith can enforce his college expense obligations on behalf of their children.[8] *See Kirby v. Kirby*, 741 A.2d 528,

---

[7]  "To show plain error, a party must establish the presence of (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity or public reputation of judicial proceedings." *Fed. Deposit Ins. Corp.*, 840 F.3d at 1172.

[8]  Stephen and Judith are the only parties to the marital settlement agreement and the 2011 and 2014 consent orders. The judgment based on

11

529, 533 (Md. App. 1999) (allowing the mother to enforce a consent decree that had required the father to pay the college expenses for the adult children). Courts have uniformly held that the party with the right to enforce a note or other agreement has standing to assert the related bankruptcy claim. *See, e.g.*, *Allen v. US Bank, NA (In re Allen)*, 472 B.R. 559, 565 (B.A.P. 9th Cir. 2012); *In re Walker*, 466 B.R. 271, 281 (Bankr. E.D. Pa. 2012).

Stephen nonetheless argues that Judith cannot assert this claim because the bankruptcy court's order would allow her to receive the payments without a corresponding obligation to apply these payments to the children's college loans or college expenses. We reject this argument for two reasons.

First, Stephen has not presented any evidence suggesting that Judith would fail to apply these funds to her children's college loans and expenses. In fact, Judith has already incurred repayment obligations to finance John's college expenses after Stephen had failed to pay them.

Second, the bankruptcy court awarded the educational expenses to Judith "for the benefit of her children," adding that "any recovery for such amounts ultimately must be used only for the claimed educational

---

the 2014 consent order also lists Judith as the party entitled to collect the $14,000 that Stephen then owed for John's college expenses.

12

expenses." R. Vol. II, at 302. As a result, Stephen lacks any basis to fear that Judith would improperly profit from the required payments.

For both reasons, we reject Stephen's challenge to Judith's right to assert a claim.

## VI.    Kate's Loan Amount

Stephen also argues that the bankruptcy court erred in finding that he had owed $24,093.73 on Kate's undergraduate loans. Judith presented loan summaries obtained from the loan servicers in support of this amount, and Stephen relied on his own testimony about his payments. The bankruptcy court carefully examined this evidence and found the amount due on Kate's loans. This finding was not clearly erroneous.

Affirmed.

Entered for the Court


Robert E. Bacharach
Circuit Judge