FILED
United States Court of Appeals
Tenth Circuit

June 13, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

In re: TODD J. MCNALLY,

    Debtor.

------------------------------

MICHAEL CARNS,

    Appellant,

v.

TODD J. MCNALLY,

    Appellee.

No. 17-1367
(BAP No. 17-001-CO)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **HOLMES**, and **PHILLIPS**, Circuit Judges.
_____

In this adversary proceeding, Michael Carns sought to revoke Todd J. McNally's

bankruptcy discharge and to establish the nondischargeability of a debt. The bankruptcy

court entered judgment in McNally's favor, and the bankruptcy appellate panel (BAP)

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

affirmed, prompting Carns' appeal to this court. Exercising jurisdiction under 28 U.S.C. § 158(d), we affirm.

## BACKGROUND

In 2006, Carns invested $700,000 with McNally to buy a shopping center in Sarasota, Florida. After the center was lost to foreclosure, Carns, through attorney James D. Gibson, sued McNally in state court and obtained a $700,000 default judgment for fraud in February 2008.

McNally continued to pursue other business ventures. Together with investor Jeffrey Hernandez, McNally formed several companies, including Vestor Auto Lease, LLC (VAL). McNally also engaged in currency trading, which was funded by Hernandez, and he wrote two books. None of these ventures was successful.

In 2010, Gibson took McNally's deposition, attempting to execute on the default judgment. He was unable, however, to find a source of funds.

Roughly four years later, in August 2014, McNally filed a voluntary Chapter 7 bankruptcy petition in Colorado. He listed Carns as an unsecured creditor but did not include an address for him or the amount of the debt. On August 18, McNally amended his schedules to include Carns, whom he listed as "Michael Carns, C/O James D. Gibson, 400 Burns Ct, Sarasota, FL 34236." Aplt. App., Vol. II at 323. A certificate of service shows that notice of the amendment and other pertinent documents were sent by first-class mail to Carns at Gibson's address. According to McNally, "[t]hat's the only address [he's] ever had for Carns." *Id.* at 192. But the state court judgment, which was sent to McNally, listed Carns's Florida mailing address.

2

On November 7, 2014, the deadline for objecting to McNally's discharge or to the dischargeability of debts passed without any objection by Carns. Accordingly, the bankruptcy court discharged McNally, and, on December 17, 2014, closed the case.

Carns learned of the bankruptcy proceedings sometime in December, when a collection agency he had retained told him that McNally had filed for bankruptcy.

In August 2015, Carns convinced the bankruptcy court to reopen the proceedings. Carns then filed an adversary complaint against McNally, (1) claiming that the debt was nondischargeable under 11 U.S.C. § 523(a), and (2) seeking to revoke the discharge under 11 U.S.C. § 727(d). The bankruptcy court conducted a trial and issued findings and conclusions in favor of McNally on both claims. The BAP affirmed.

## DISCUSSION
### I. Standards of Review

"Although this appeal is from a decision by the BAP, we review only the Bankruptcy Court's decision." *Taylor v. Taylor (In re Taylor)*, 737 F.3d 670, 674 (10th Cir. 2013) (internal quotation marks omitted). "We review matters of law de novo, and we review factual findings made by the bankruptcy court for clear error." *Id.* (internal quotation marks omitted). "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made." *Mkt. Ctr. E. Retail Prop., Inc. v. Lurie (In re Mkt. Ctr. E. Retail Prop., Inc.)*, 730 F.3d 1239, 1244 (10th Cir. 2013) (internal quotation marks omitted). In conducting our review, "we treat the BAP as a

3

subordinate appellate tribunal whose rulings may be persuasive." *In re Taylor*, 737 F.3d at 674 (brackets and internal quotation marks omitted).

## II. Dischargeability of Debt - Notice

A Chapter 7 debtor cannot discharge a fraud debt that is "neither listed nor scheduled . . . in time to permit . . . [a creditor's] timely filing of a proof of claim and timely request for a determination of dischargeability of such debt . . . *unless [the] creditor had notice* or actual knowledge of the case in time for such timely filing and request." 11 U.S.C. § 523(a)(3)(B) (emphasis added). In other words, under § 523(a)(3)(B), "when a debtor does not schedule debts so as to give creditors notice of the bankruptcy and time to permit filing of a proof of claim or dischargeability complaint, those debts are not discharged unless the creditor had notice or actual knowledge of the debtor's bankruptcy case." *Media House Prods., Inc. v. Amari (In re Amari)*, 483 B.R. 836, 843 (Bankr. N.D. Ill. 2012); *accord Jones v. Hurtado (In re Hurtado)*, Case No. 09-16160-A-7, Adv. No. 11-1102, 2015 WL 2399665, at *4 (Bankr. E.D. Cal. May 18, 2015) (explaining that § 523(a)(3)(B) "excepts from discharge debts held by creditors who were neither given notice of the bankruptcy, nor otherwise had notice or actual knowledge of it, in time to file a proof of claim or to prosecute an adversary proceeding to except their debt from discharge").

The bankruptcy court concluded that § 523(a)(3)(B)'s notice requirement was satisfied because

> Carns was scheduled in care of his attorney, Gibson, who had represented Carns in obtaining the Default Judgment and who, for some time afterward, continued to represent Carns in attempts to collect the

4

> Default Judgment. There was no evidence that Gibson's mailing address, as listed on the amended schedule, was incorrect. There was no evidence that the mail addressed to Gibson was returned to McNally's counsel as undeliverable. The Court finds that the notice to Gibson, Carns's agent in regards to the Default Judgment, satisfies the requirement of notice to Carns[.]

Aplt. App., Vol. I at 108. Carns disagrees, arguing that notifying Gibson was inconsistent with due process because (1) Gibson "was no longer actively representing [him] at the time of [McNally's] bankruptcy filing in 2014," Aplt. Opening Br. at 19; and (2) McNally could have easily ascertained Carns's address from documents in the Florida fraud case, like the default judgment, *id.* at 17. We are not persuaded that the bankruptcy court erred.

Generally speaking, due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and [to] afford them an opportunity to [respond]." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). In a bankruptcy case, "[n]otice requires that a debtor use reasonable diligence under the circumstances to inform a creditor of the bankruptcy petition, but a bankrupt is not required to exhaust every possible avenue of information in ascertaining a creditor's address." *In re Herman*, 737 F.3d 449, 453 (7th Cir. 2013) (internal quotation marks omitted). And where, as here, "an attorney is representing a creditor in order to collect a debt outside of the bankruptcy, notice of the bankruptcy petition sent to that attorney by the debtor can be imputed to the creditor." *Id.* at 454.

Carns cites no evidence that Gibson did not receive the bankruptcy documents mailed to him. Nor does he cite any evidence showing a termination of their

5

attorney-client relationship, which was premised on the default judgment that McNally sought to discharge. Although roughly four years passed from the time Gibson took McNally's deposition in an attempt to satisfy the judgment and McNally filed for bankruptcy protection, Carns identifies no intervening event that should have caused McNally to question the use of Gibson's address for notifying Carns. Indeed, McNally testified that Gibson's address was the only one he had for Carns. And while McNally might have ascertained Carns's address from the state court documents, reasonable diligence does not require the debtor to supply "the best notice . . . to apprise creditors of a case." *In re Schicke*, 290 B.R. 792, 803 (10th Cir. BAP 2003) (internal quotation marks omitted), *aff'd*, 97 F. App'x 249 (10th Cir. 2004).

In short, the bankruptcy court's factual findings concerning notice are not clearly erroneous, and its conclusion that Carns received adequate notice is sound.

### III. Revocation of Discharge

Under 11 U.S.C. § 727(d)(1), the bankruptcy court must grant a creditor's request to revoke a Chapter 7 debtor's discharge where "such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." This provision mandates revocation on fraud grounds that "would have barred the discharge had the fraud been known." *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991). "Essentially, then, a § 727(d)(1) claim breaks down into two elements: (1) denial of discharge would have been appropriate [initially]; and (2) the debtor committed fraud in fact that prevented the

6

movant from knowing until after the discharge had been entered." *Miller v. Washabaugh (In re Washabaugh)*, 572 B.R. 141, 151 (Bankr. M.D. N.C. 2017).

One such ground that bars discharge initially is where "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account," 11 U.S.C. § 727(a)(4)(A). "To trigger section 727(a)(4)(A), the false oath must relate to a material matter and must be made willfully with intent to defraud." *Job v. Calder (In re Calder)*, 907 F.2d 953, 955 (10th Cir. 1990). Omitting assets from a schedule or statement of financial affairs "may constitute a false oath under section 727(a)(4)(A)." *Id.*

Carns contends that revocation was warranted by McNally's failure to schedule his interests in the two books he had written, his currency-trading account, and Vestor Auto Lease, as well as his failure to disclose a $5,117 transfer to Vestor and a $1,000 transfer to the currency-trading account. The bankruptcy court found that the monies transferred to Vestor and other corporate entities associated with McNally originated from Hernandez's personal funds. As such, the court found McNally's failure to schedule those transfers was immaterial. Similarly, the court seems to have found that McNally's failure to list himself as an owner of Vestor, rather than an employee, was immaterial given that the company had gone out of business due to auto thefts. Regarding fraudulent intent, the court stated:

> This is not a case in which a debtor failed to list a substantial ownership interest in a profitable business. . . . In this case, the Court cannot infer a fraudulent intent from [McNally] listing himself as an employee, rather than an owner/employee, of a failed business. . . . Considering all of the evidence before the Court, and construing the statute

7

liberally in favor of McNally as the debtor, the Court finds that Carns has not met his burden of proving that McNally obtained his discharge through fraud.

Aplt. App., Vol. I at 106. As for the books and currency-trading account, the court observed that those endeavors were unsuccessful, but it did not include them in its analysis.

Before we address Carns's attacks on the bankruptcy court's rulings, we pause to address two preliminary matters. First, the bankruptcy court, in addition to finding neither materiality nor fraudulent intent, also determined that Carns did not exercise due diligence in seeking revocation, given that he was notified (through Gibson) of the bankruptcy proceedings and was aware of possible fraud, but did not seek revocation until after McNally's discharge. Carns does not contest this determination beyond arguing that the notice was insufficient. As we have rejected that notice argument, we could rest our decision on the bankruptcy court's due-diligence determination and end our discussion. *See In re Washabaugh*, 572 B.R. at 151 (stating that in addition to showing a denial of discharge would have been warranted, a § 727(d)(1) movant must show he did not know of the fraud pre-discharge).

Second, the BAP concluded that Carns's § 727(d)(1) claim failed because he did not contest the bankruptcy court's finding of no fraudulent intent; rather, he focused solely on materiality. The BAP cursorily stated, however, that the bankruptcy court did not err as to fraudulent intent, given the court's findings that McNally credibly denied a lack of such intent and that Carns's evidence failed to show fraud. Arguably, Carns waived the intent issue. *See Burnett v. Resurgent Capital Servs. (In re Burnett)*, 435 F.3d

8

971, 976-77 (9th Cir. 2006) (stating that issues not presented to the BAP are waived unless there are "exceptional circumstances").

Despite these preliminary obstacles, we elect to proceed to the merits of Carns's § 727(d)(1) claim. Carns argues that the bankruptcy court erred by equating materiality with profitability. Granted, the fact that an omitted asset is worthless has no bearing on whether the omission relates to a material matter. *See In re Calder*, 907 F.2d at 955. The salient inquiry for materiality is whether the omission "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Id.* (internal quotation marks omitted).

But the bankruptcy court did not equate materiality with profitability. Rather, the court correctly noted that a debtor's fraudulent *intent* can be gleaned from the failure to disclose a valuable asset. *See Marine Midland Bus. Loans, Inc. v. Carey (In re Carey)*, 938 F.2d 1073, 1077 (10th Cir. 1991) (observing that "[c]ourts . . . consider the monetary value of the assets converted in determining whether the debtor acted with fraudulent intent"); 4 Norton Bankruptcy Law & Practice § 86:11 (3d ed. 2018) ("Where there is a knowing failure to list a substantial asset, an inference of fraudulent intent may be drawn in the absence of mitigating circumstances."). As the bankruptcy court noted, none of the items McNally omitted was a valuable asset. Thus, the court appropriately declined to infer fraudulent intent from McNally's failure to disclose the various worthless assets.

Insofar as the bankruptcy court declined to find materiality in the monetary transfers to Vestor and McNally's characterization of himself as merely a Vestor

9

employee, Carns has not shown clear error. Specifically, Carns does not explain how knowing that the transferred funds belonged to Hernandez or that McNally had an ownership interest in Vestor might have led him to recoverable assets. *See In re Calder*, 907 F.2d at 955 (noting materiality's significance to "the discovery of assets, business dealings, or the existence and disposition of [the debtor's] property" (internal quotation marks omitted)); *Mazer-Marino v. Levi (In re Levi)*, 581 B.R. 733, 754 (Bankr. S.D. N.Y. 2017) ("Materiality . . . requires a showing that the relevant information was something that creditors and the trustee reasonably would have regarded as significant in identifying the assets of the estate that could be liquidated and used to satisfy claims." (internal quotation marks omitted)).

It is insufficient to merely suggest, as Carns does, that "there is no question that [McNally's] failure to disclose a number of assets and transfers prevented creditors from discovering accurate information about [McNally's] assets and liabilities, or past financial transactions," Aplt. Opening Br. at 24-25. Establishing clear error requires more than unadorned assertions. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) ("If the [factfinder's] account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.").[1]

---

[1] Carns complains that McNally "prevented [him] from presenting any evidence related to the value of [his] assets at trial." Aplt. Opening Br. at 25. According to Carns, "the Bankruptcy Court held that an adverse inference would be

(continued)

10

To the extent Carns asks that we infer fraudulent intent from McNally's failure to disclose the two monetary transfers, as well as his interests in the books, currency-trading accounts, and Vestor, he essentially asks that we substitute our view of the evidence for that of the bankruptcy court. But on clear-error review, we are bound by a lower tribunal's factual determinations so long as they are "plausible in light of the record viewed in its entirety." *Id.* And we conclude that the bankruptcy court's finding as to McNally's lack of fraudulent intent is plausible, and therefore, not clearly erroneous.

### CONCLUSION

We affirm.

Entered for the Court


Gregory A. Phillips
Circuit Judge

---

drawn from [McNally's] failure to turnover this information, yet failed to do so in its ruling." *Id.* The record does not support Carns's position. In an order denying Carns's motion for default judgment, the bankruptcy court stated it could not conclude that McNally "ha[d] acted willfully and in bad faith in failing to turn over further information." Aplt. App., Vol. I at 98. Accordingly, the bankruptcy court explained that Carns would have to "demonstrate [at trial] that the documents in question might have a bearing on a relevant and material fact" before it would consider drawing "reasonable inferences against [McNally]." *Id.* Carns does not show that he made any such demonstration at trial.